## QUEVEDO *v.* ESTATE OF PINO.

### APPEAL from the District Court of Mayagüez.

No. 411.—Decided November 16, 1909.

NONCOMPLIANCE WITH CONTRACT—INDEMNITY FOR DAMAGES AND LOSSES—DEFINITION OF CONTRACT.—In accordance with our statutes, a contract is an agreement to do or not to do a particular thing entered into with the consent of the contracting parties in relation to a definite object, which may be the subject of the contract, and for the consideration established.

AGREEMENT BY MEANS OF CORRESPONDENCE—CONSUMMATION OF CONTRACT.—A contract is consummated by a letter when A, acting in his own behalf, accepts an offer made by B, especially taking into consideration an order given by A for the delivery of cattle, one of the objects of the contract.

AGENCY—EXISTENCE THEREOF—CONTRADICTORY EVIDENCE.—To bind third parties it is necessary to show the existence of the agency and the powers conferred upon the agent, and when the evidence upon these points is contradictory the conclusions of the trial court must, as a general rule, be accepted.

CREDIBILITY OF WITNESSES.—It is a well-established principle of law that the credibility of witnesses and the effect and weight to be given to conflicting and contradictory oral evidence are questions of fact to be determined by the triers of the facts whether a court or a jury.

DETERMINATION AS TO CREDIBILITY OF WITNESSES.—This opinion sets forth the reasons why the trial court is in a better position than an appellate court to determine as to the credibility of witnesses, and a review of the jurisprudence applicable to the question is presented.

CLEAR AND DEFINITE EVIDENCE UPON A QUESTION OF FACT.—Where upon a question of fact the evidence is clear and definite in favor of the litigant who has obtained judgment in his favor, the judgment appealed from should not be disturbed.

The facts are stated in the opinion.

*Mr. Arturo Aponte* for appellant.

*Mr. Martín Travieso, Jr.,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This action was brought to recover damages for breach of contract. Plaintiff alleges that the defendants, through their agent, contracted with him to sell him two tracts of land and certain live stock for the sum of seven thousand dollars ($7,000), and afterwards refused to carry out the contract to his damage in the sum of five thousand dollars ($5,000).

The written part of the contract on which the plaintiff relies is set out in the amended complaint, and is in the form of a letter, which reads as follows:

"Mayagüez, Porto Rico, 5th of August, 1908. Mr. Francisco Quevedo. Isabela. My dear friend: I now accept, by the consent of the Succession Pino, your proposition to pay us $7,000 for the property 'Ranchera,' including the farm of Antonio Pino, with the canes, improvements, cattle and other livestock on the same, which sum, as you said, must be paid in full on the following terms: $3,000 on the 14th inst. and the balance of $4,000 to be paid during the month of January of next year, it being agreed that you will pay in advance nine per cent interest per annum on the $4,000. I entreat you not to fail to get, if possible, before the 14th inst., the $3,000 required for the public auction. Without further particulars, I am, yours truly, E. Bonilla."

It is also alleged that the defendants through their agent gave plaintiff an order on the man in charge of the farm to deliver the same and the cattle sold to the plaintiff. This letter or order is found in the record, in the statement of the case, and contains the following words:

"Mayagüez, P. R. 5th of August, 1908. Mr. Emilio Corchado. Isabela. Dear Emilano. My only object in writing this letter is to

tell you that I have just closed the contract of sale of the estate 'Ranchera' together with Toñas farm, the oxen, the canes and everything that remains of the succesion, with our friend Mr. Quevedo, to whom you may deliver the cattle, as I think he wishes to take possession of the farm as soon as he reaches that town. Without further particulars, and with best regards to your family, I am, yours truly, E. Bonilla.''

The defendants deny that the documents mentioned would constitute the consummation of a contract even if executed by a duly authorized agent, and further they deny any authority on the part of Eugenio Bonilla to represent them as an agent in this negotiation.

Other questions of minor importance might be elicited from the record, but these are the pivotal points on which the whole case turns. Let us examine them in the order in which they are presented before us.

The first legal question with which we are confronted is: ''What is a contract?'' Numerous definitions can be quoted from the law books. A contract has been defined, by the Supreme Court of the United States, to be an agreement between two or more parties to do, or not to do, a particular thing. This definition is found in the opinion of Mr. Chief Justice Taney in the case of *Charles River Bridge* v. *Warren Bridge,* in 36 U. S., 571. In this he follows substantially the definition given by Mr. Chief Justice Marshall in the case of *Sturges* v. *Crowingshield,* 17 U. S., 197. To the same effect is the definition of Dr. Parsons in his works on contracts. (See p. 5 of first volume.) Blackstone is somewhat more explicit and says a contract is an agreement, upon sufficient consideration to do, or not to do, a particular thing. (See Blackstone Commentaries, 2 vol., p. 446.) In this he is followed by Chancellor Kent in his commentaries in the second volume, page 449. Anson in his work on contracts, page nine, says that a contract is an agreement enforceable, made between two or more persons, by which rights are acquired by one or both to acts or forbearances on the part of the other. Mr. Justice Story

defines a contract to be a deliberate agreement, between competent parties, upon a legal consideration to do or to abstain from doing some act.   (See Story on Contracts, sec. 1.)   The Supreme Court of California has said that a contract is a voluntary and lawful agreement, by competent parties, for a good consideration, to do, or not to do, a specified thing. (*Robinson* v. *Magee,* 9 Cal., 83.)   The Supreme Court of the State of New York has defined a contract to be a mutual promise, upon lawful consideration or cause, which binds the parties to a performance.   (2 Hill, N. Y., 551.)   So we can thus gather from these high authorities what is considered to be a contract at common law.   The civil law does not differ materially from the common law in the definition of a contract. Pothier defines a contract to be an agreement by which two parties reciprocally promise and engage, or one of them, promises and engages to the other, to give some particular thing, or to do or abstain from doing some particular act.   (Pothier Comts., Pt. I, C. i, sec. 1.)   Perhaps the nearest approach to a direct definition of a contract contained in our statutes is to be found in section 1221 of the Civil Code, which reads as follows:

"A contract exists from the moment one or more persons consents to bind himself or themselves, with regard to another or others, to give something or to render some service."

And our statute further prescribes the essential elements of a contract as follows:

"There is no contract unless the following requisites exist:
"1. The consent of the contracting parties.
"2. A definite object which may be the subject of the contract.
"3. The consideration for the obligation which may be established."   (Civil Code P. R., sec. 1228.)

So it may be said that under our statutes a contract is an agreement made by the consent of the contracting parties, in reference to a definite object which may be the subject thereof,

for such consideration as may be established, to do or refrain from doing an act specified. This definition is a little more prolix than some others, but does not differ essentially from that given in the common law, as set out by Blackstone, Kent and other great writers.

Then, under the law as we find it, was a contract made between the parties, plaintiff and defendant, in this suit? The letter written by Bonilla to Quevedo, on the 5th of August, was not a proposition requiring his acceptance. But, on the contrary, it recognezed an offer, oral or written, which had been made by Quevedo, and restates the same and accepts it in plain terms. This, if the negotiation had been in progress between Quevedo and Bonilla as principals would unquestionably have consummated a contract. And the consummation of the contract is further shown in the order for the delivery of the cattle addressed to Corchado, of even date with the letter to Quevedo. That order says: "I have just closed the contract of sale of the estate." Had Bonilla been the owner of the property the sale would have been complete and he would have been bound to comply with its terms. (Secs. 1221, 1222 and 1229, Civil Code of Porto Rico; 7 Am. & Eng. Encyc. of Law, p. 125, and cases cited in note 7; *Duble* v. *Batts & Dean,* 38 Tex., 312; *Deshon* v. *Fosdick,* 1 Wood U. S., 286; cited in 7 Am. & Eng. Encyc. of Law, note on p. 138.)

The letters relied on by the plaintiff in this case as constituting the consummation of a contract are very different and clearly distinguishable from the case of *Moulton* v. *Kershaw,* found in 59 Wis., 316, and also reported in 48 American Reports on pages 516-520, with a note and citation of other cases. In these cases the court held that the correspondence did not constitute a contract; but the facts therein approached the line dividing a negotiation from a contract very closely. In the case at bar, according to our views, the line was crossed and the contract concluded.

The next question presented for our consideration is: "Had the so-called agent, Bonilla, authority to bind the Suc-

cession Pino in making the contract, if there was a contract?"
Our Civil Code is explicit on the matters of the powers of
agents and in section 1226 says:

"No one can contract in the name of another without being author-
ized by him or without having his legal representation according to
law."

It is also provided, in section 1612 of our Civil Code, that
an agency may be either express or implied. Said section
reads in full as follows:

"An agency may be express or implied. An express agency may
be given by a public or private instrument and even by parol. The
acceptance may also be express or implied, the latter being inferred
from the acts of the agent."

The powers of an agent are further limited in section 1615
of the Civil Code, which reads as follows:

"An agency stated in general terms only includes acts of admin-
istration. In order to compromise, alienate, mortgage, or to execute
any other act of strict ownership an express commission is required."

Then let us apply the law of agency to the facts as found
and see whether or not the agent in this case was authorized
to make the alleged contract, on which the plaintiff relies to
support his claim for damages incurred by the alleged breach
thereof.

It is apparent from the record that this action is brought
only against the Succession Pino, composed of the two women,
Antonia Pino, widow of Gómez, and María Pino, wife of Bo-
nilla; and that Eugenio Bonilla is not made a party in his
individual capacity, but is only connected with the case as
agent of his wife and his sister-in-law, composing the succes-
sion of their father, the deceased Francisco Antonio Pino.
Then we have nothing to do with any individual obligation;
if any there be, which Bonilla may have incurred to the plain-

tiff Quevedo, but only with such as may have been incurred by the succession mentioned. It is also clear from the record that the two women, composing the said succession, made no contract personally, but that if any were made it was done by Bonilla as their agent. Then the material question presenting itself as intimated above involves the authority of Bonilla to represent the defendants, Antonia Pino and María Pino, or either of them.

What is the law? Chapter I of Title IX of our Civil Code defines the powers and duties of agents and the manner of constituting them and the essential portions have been quoted. The evidence adduced on the trial in regard to the authorization of Bonilla to make the contract, for the breach of which this action is brought, is conflicting in all the essential particulars; the plaintiff and his witness, Acosta, testifying that the authority of Bonilla was ample and directly given him by Antonio Pino and María Pino; and on the contrary the testimony of Bonilla and the two sisters, Pino, positively denying the agency, and the women even declaring that they had never seen nor heard of the letters relied on to show the closing of the contract until after this suit was instituted. In such a conflict of evidence it devolves on the court, sitting without a jury, to decide on the credibility of the witnesses and to answer the question of fact according to a preponderance of the evidence. It is well settled that the credibility of witnesses and the effect and weight to be given to conflicting and contradictory oral evidence are all questions of fact to be determined by the triers of the facts, whether a court or a jury, and not questions of law for the decision of the court. (30 Am. & Eng. Encyc. of Law, p. 1063.)

The plain principle that a trial judge has better opportunities than an appellate court to determine the credibility of testimony is given the following perspicuous and picturesque language by a distinguished jurist of the State of Missouri. He substantially says: "Truth does not always stalk boldly forth naked, but modest withal, in a printed abstract presented

to a court of last resort. She often hides in nooks and crannies, visible only to the mind's eye of the judge who tries the case. To him appears the furtive glance, the blush of conscious shame, the hesitation, the sincere or the flippant or the sneering tone, the heat, the calmness, the yawn, the sigh, the candor or the cunning, the scant respect for or the full realization of the solemnity of an oath, the carriage and the mien of the occupant of the witness box. The brazen face of the falsifier, the glibness of the schooled witness in reciting his lesson, or the itching over-eagerness of the swift witness, as well as the honest countenance of the truthful one, are truly seen by him alone. In short, one witness may give testimony that reads in print, and the record·of the appellate court, as if falling from the lips of an angel of light, and yet not a soul who heard it *nisi* believed a word of it; and another witness may testify so that it reads in print brokenly and obscurely, and yet there was that about the witness in the trial court that carried the conviction of truth to every heart that heard him testify. Therefore, where an issue of fact rests alone on the credibility of witnesses who testify in contradiction to each other, the upper court may, with entire propriety, rely somewhat on the superior advantage of the lower court in determining which way the balance turns in weighing the evidence.''

We have often held that the trial court possesses facilities for weighing the evidence and determining the credibility of witnesses which neither this nor any other appellate court, in the nature of judicial proceedings, can command; and that in cases of conflicting testimony we will be very reluctant to disregard the findings of the trial court on such questions. (See the following cases: *Andino* v. *Cepeda,* decided on 22d of June, 1909; *Auffant* v. *Serra et al.,* 14 P. R. Rep., 39; *Succession of Iglesias* v. *Bolívar,* 11 P. R. Rep., 422; *Morales* v. *La Central Machete,* 2 Dec. de P. R., 603; see also the following reputable authorities: 30 Am. & Eng. Encyc. of Law,

1063-1066, and cases cited in notes; *U. S.* v. *Hughes,* 34 Fed. Rep., 734; *People v. Compton,* 123 Cal., 403.)

Evidently the trial judge, through he did not deliver any written opinion, or even file findings of fact and conclusions of law, was of the opinion that the preponderance of evidence on this point, and perhaps others, was in favor of the defendants. But whether this was his opinion or not, his judgment may very well have been based on such a conclusion; and as a correct judgment was rendered it matters not whether the reasons existing therefor, in the mind of the trial judge, were sound or not, we can and should affirm it for reasons appearing to us properly based on correct principles. Then as the trial court evidently believed the witnesses who testified in favor of the defendant, and their testimony was clear and unequivocal as to the want of authority in the agent, Bonilla, to make any contract binding on the Succession Pino, there is evidence sufficient in the record to support the judgment of the court below, and it will not be disturbed.

*Affirmed.*

Chief Justice Hernández and Justices Figueras, Wolf and del Toro concurred.