[Crim. No. 188. First Appellate District.—March 30, 1910.]

## THE PEOPLE, Respondent, v. ISABELLA MARTIN, Appellant.

CRIMINAL LAW—DYNAMITING DWELLING—ACT OF LAD IN DEFENDANT'S CUSTODY—FEAR OF LIFE—EVIDENCE—OTHER FELONIES—THEORY AGAINST ACCOMPLICE.—Where a woman defendant was charged with dynamiting a dwelling, and it appears that the act was done at her instigation by a lad of sixteen, who was in her custody, and was prosecuting witness against her, and other evidence was admitted, over her objection, that she had treated the lad cruelly, and had required him to commit other felonies named, for her benefit, on the theory that the lad, as a witness, was not an accomplice whose evidence required corroboration, because compelled to do the act charged, by reason of defendant's menace, and threats of taking his life, it is held that such evidence was not admissible on that theory, since the lad's testimony clearly shows that there was no imminent danger of losing his life, but only a threat of a future, remote and conditional danger thereto, which might have been avoided if the act were refused.

ID.—CONSTRUCTION OF PENAL CODE—EXCEPTION TO CAPABILITY TO COMMIT CRIME—THREATS—REASONABLE BELIEF OF IMMINENT DANGER TO LIFE.—Section 26 of the Penal Code, naming as an exception to persons capable of committing crime, "persons (unless the crime be punishable with death) who committed the act or made the omission complained of under threats or menaces sufficient to show that they had reasonable cause to believe, and did believe, their lives would be endangered, if they refused," is to be construed as importing that a reasonable belief must be so caused that there was an imminent or impending danger to life.

ID.—ANOMALOUS CONSTRUCTION—OTHER PROVISIONS—RIGHT OF SELF-DEFENSE—IMMINENT DANGER.—Since it appears from other provisions of the Penal Code, as well as from the common-law rule, that the right of self-defense or forcible resistance to an aggressor exists only in the presence of imminent danger, it would

be an anomalous condition or construction of the law under section 26 of the Penal Code that would justify or excuse the commission of a felony against the person or property of an innocent person, because the person doing the deed had reason to fear, and did fear, not an imminent and immediate danger, but a future and remote danger, which in the very nature of things could be readily averted by innocent methods.

ID.—COMPULSION OF MINOR—CONSTRUCTION OF STATUTE UNAFFECTED.— The fact that in this case the person committing the deed, and claiming that it was done under such compulsion as excused him from criminality, was a minor of sixteen years of age, cannot affect the construction of the statute which is general in its terms and applicable to persons of any age. It must be given a reasonable meaning to effect the design of the legislature and promote justice. It requires the same reasonable belief of imminent danger, induced in the same manner, in the case of a minor as in the case of any other person to excuse responsibility for crime.

ID.—INADMISSIBLE EVIDENCE OF MINOR AS WITNESS—MOTION TO STRIKE OUT.—Inasmuch as it is clear that the minor witness had no fear of imminent danger to his life, but only a fear that defendant at some future time and at some remote place would kill him, all of the evidence admitted as tending to show the existence and reasonableness of such fear was improper, and should have been stricken out on motion of the defendant.

ID.—ERRORS NOT CURED—PROOF BY DEFENDANT.—Such errors were not cured by the testimony of a witness for the defendant that the minor witness had confessed to him the commission of crimes, and implicating defendant therein, where such testimony covers nowhere near all of the matter erroneously admitted, and which should have been stricken out.

ID.—IRRELEVANT EVIDENCE—DEFENDANT'S POSSESSION OF POISONS WHEN ARRESTED.—It was error to admit irrelevant evidence to show that defendant, when arrested, ten months after the crime charged, had possession of poisons having no relation to that crime.

ID.—OBSCENE LETTERS AND WRITINGS OF DEFENDANT—PREJUDICIAL ERROR.—It was prejudicial error to admit in evidence obscene letters and writings of the defendant, in no way connected with the crime charged and tending to show her to be a depraved and vicious woman.

ID.—IRRELEVANT EVIDENCE AS TO OTHER OFFENSES.—All of the evidence tending to show defendant's connection with other acts and offenses having no relation to the offense charged was highly prejudicial.

ID.—PREJUDICIAL ERROR IN EVIDENCE—NEW TRIAL.—When, as in this case, irrelevant testimony has been admitted, and is of such a

character as to be necessarily prejudicial to the defendant appealing, a new trial must be granted.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. Wm. S. Wells, Judge.

The facts are stated in the opinion of the court.

A. L. Frick, and Burton Jackson Wyman, for Appellant.

U. S. Webb, Attorney General, William H. Donahue, District Attorney of Alameda County, and Walter J. Burpee, Deputy District Attorney, for Respondent.

HALL, J.—The defendant was charged, under section 601 of the Penal Code, with having, on the nineteenth day of March, 1907, at the county of Alameda, deposited and exploded dynamite at and near the house of Frank B. Ogden. Upon her trial she was found guilty, as charged, by the verdict of the jury, and before judgment moved for a new trial. Her motion was denied, and judgment pronounced of imprisonment for the term of her natural life. From the judgment and order she in due time appealed to this court. The record upon appeal consists of the judgment-roll and a full transcript of the reporter's notes of all the proceedings before the trial court, and is contained in five volumes consisting of 2,770 pages of printed matter. The labor of this court, however, has been greatly lessened by the very systematic and lawyer-like manner in which counsel upon both sides have briefed the case.

No attack is made by appellant upon the sufficiency of the evidence to support the verdict, nor upon the correctness of the instructions to the jury. Appellant relies for a reversal solely upon the rulings of the court in admitting evidence and in refusing to strike out evidence that had been admitted over defendant's objections.

The crime with which defendant was charged was not committed by her in person, but was in fact committed by John B. Martin at her instigation, and, as it is claimed, by reason of her coercion. John B. Martin was, at the time of the commission of the crime, sixteen years of age, and though he

had been reared by defendant from babyhood, he was not her child. He was the principal witness for the prosecution, and testified in detail to all the circumstances of the commission of the crime, from which it appears that defendant had for a considerable time before the commission of the crime contemplated the deed, and with the aid of the witness had made careful preparation therefor. Her motive grew out of the result of some litigation which she had had in a department of the superior court of Alameda county, presided over by the Hon. Frank B. Ogden, although the action was not finally tried before Judge Ogden. The witness and defendant discussed the contemplated crime, months before its commission, at Weaverville in Trinity county, where defendant had a home and certain mining properties. Early in January, 1907, they came to Oakland, Alameda county, where defendant owned a home and other property. Under the house belonging to defendant, and in which she and the witness took up their residence, was stored a quantity of dynamite. This was by the witness taken from under the house by the direction of defendant, and placed upon a shelf to dry. Subsequently a portion of it, about twelve sticks, was made into a bomb, by the witness and defendant, for the purpose of dynamiting the residence of Judge Ogden. A long fuse was furnished by defendant and carefully prepared for subsequent use. A bicycle was rented by defendant to enable the witness to quickly escape from the scene of the intended crime. Careful preparations were made to enable an *alibi* to be proved for the witness in case they were suspected or charged with the crime, and on the night of the nineteenth day of March, 1907, the witness, at the direction of defendant, took the bomb and fuse to the residence of Judge Ogden, about a mile distant from the residence of defendant, in which she remained, and after observing that the residence of Judge Ogden was then occupied by members of his family (wife, four children and a maid), placed the bomb upon the front porch of the house, carefully adjusted the fuse, lighted the same, mounted his wheel and rode away to his home, where the defendant awaited his coming. The explosion occurred before the witness reached his home; and though badly injuring the dwelling of Judge Ogden, did no harm to the unsuspecting members of the household sheltered

therein, other than such as may have arisen from fright and nervous shock at the dastardly crime attempted against their home and possibly lives.

During the progress of the trial the prosecution was permitted to prove, not only by the witness, John B. Martin, but by other witnesses as well, brutal and cruel treatment of John B. Martin by the defendant. Also the prosecution was allowed to introduce evidence by the witness, John B. Martin, of numerous thefts committed by him at the instigation of and for the benefit of defendant; also that the defendant, prior to the Ogden dynamiting, planned and caused the witness to carry out or attempt six different felonies, to wit, three cases of arson in 1901, and three attempts to dynamite the residence of Wm. J. Dingee in 1904. Also evidence was allowed over the objection of defendant that after the Ogden affair defendant purchased cyanide of potassium (a deadly poison), and planned to have the witness place the same in a reservoir at Weaverville used to supply drinking water; and also in 1908 planned to have the witness dynamite the residence of Judge George Samuels at Oakland. (The point that this occurred subsequent to the Ogden affair was waived.)

All this evidence, and some other of similar import, was admitted over objections of defendant, and retained over her several motions to strike out, upon the theory that it tended to prove that the witness, John B. Martin, was not an accomplice of the defendant in the crime for which she was on trial, and therefore his testimony as a matter of law would support a conviction without corroboration. This theory is in turn predicated upon the theory that, although the witness with his own hands dynamited the Ogden residence when over a mile distant from the person of defendant, he was guilty of no crime in so doing because, as it is claimed by respondent, he committed the act under threats or menaces of defendant, sufficient to show that he had reasonable cause to believe, and did believe, that his life would be endangered unless he committed the deed. It is contended that the evidence objected to was admissible as tending to show the reasonableness of such belief and the existence thereof. The entire superstructure of respondent's contention is based upon the construction placed by respondent upon section 26 of the Penal Code, which, so far as applicable to the matter under dis-

cussion, is as follows: "All persons are capable of committing crimes except those belonging to the following classes: . . . Eighth. Persons (unless the crime be punishable with death) who committed the act or made the omission charged under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused."

The vital point of difference between appellant and respondent as to the effect of this section of the code is this, that appellant insists that the danger to the life of the person claiming the protection of the statute must be, or reasonably appear to be, imminent and immediately impending, while respondent claims that such danger is sufficient to excuse from criminal responsibility for any crime, however heinous, not punishable with death, if committed under threats causing a reasonable belief on the part of the person threatened that a refusal would endanger his life either immediately or at some time in the future.

To make this clear, it is now necessary to state the testimony given by the witness, John B. Martin, as to the threats and the fear under which it is claimed he committed the crime for which defendant was convicted. We quote from the transcript:

"Q. Why did you take this bomb prepared by you and Mrs. Martin, and place it on Judge Ogden's premises? A. Because I was forced to.

"Q. How were you forced to? A. By threats Mrs. Martin made.

"Q. What did she say, what threats did she make? A. She said if I didn't place the bomb in Judge Ogden's porch she would have me arrested for burning the house, take me up to Trinity county, hit me over the head with a sledge hammer, put a stick of powder under me and blow me up, and come into town and say it was an accident, and they would believe it.

"Q. I will ask you what was your feeling toward Mrs. Martin on the nineteenth day of March, 1907, Mrs. Martin this defendant? A. I was afraid of her. I was afraid that she would kill me if I didn't carry out such deeds as she told me to."

It further appeared from his testimony that this threat was made several weeks before the crime was committed, and before the bomb was made. On cross-examination the witness, in response to the question, "Then you want to be understood now, do you, that the fear which you had of what she would do if you did not explode the Ogden bomb was, not that she would kill you or attempt to kill you in Oakland, but she would get you up in Weaverville and kill you there. That is correct, is it?" answered, "It is."

In other words, it was made perfectly clear and certain that the witness did not act under any fear of immediate or imminent danger of his life, but only under a fear that at some future time and at a place hundreds of miles away from the scene of the contemplated crime his life would be in danger from the defendant. Unless such a fear—a fear of a future and remote danger to life—will exempt a person from responsibility for any crime (not punishable with death), committed against the person or property of an innocent third person, all this testimony introduced under the theory that it tended to show the existence and reasonableness of the fear under which it is claimed the witness and perpetrator of the crime acted, was inadmissible.

We do not understand respondent to claim that, at the common law, such a fear of future and remote danger to life would excuse the commission of a felony. The contention of respondent is based entirely upon the wording of section 26 of the Penal Code. At common law, the right to self-defense against imminent and immediate danger to life or limb from an aggressor existed. It only existed, however, to prevent death or bodily injury that was imminent, and could only be exercised against the person threatening the injury. It did not extend to the killing of an innocent third person. It has ever been the rule that necessity is no excuse for killing an innocent person. Blackstone says: "And therefore, though a man be violently assaulted and hath no other possible means of escaping death, but by killing an innocent person, this fear and force shall not acquit him of murder; for he ought rather to die himself than escape by the murder of an innocent. But in such a case he is permitted to kill the assailant, for the law of nature and self-defense, its primary canon, have made him his own protector." (4 Blackstone [Cooley], sec. 30.)

In *Arp* v. *State,* 97 Ala. 5, [38 Am. St. Rep. 137, 12 South. 301], it is said: "The authorities seem to be conclusive that, at common law, no man can excuse himself under the plea of necessity or compulsion for taking the life of an innocent person."

So, too, while the statute of this state recognizes and sanctions the right of self-defense against an aggressor, the right can only be exercised to prevent an imminent danger or an offense about to be committed. Thus homicide is justifiable "when committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished." (Pen. Code, 197.)

"Lawful resistance to the commission of a public offense may be made: 1. By the party about to be injured." (Pen. Code, 692.)

"Resistance sufficient to prevent the offense may be made by the party about to be injured:

"1. To prevent an offense against his person, or his family or some member thereof;

"2. To prevent an illegal attempt by force to take or injure property in his lawful possession." (Pen. Code, 693.)

If the right of self-defense and forcible resistance against an aggressor exists only in the presence of imminent danger, or when an offense is about to be committed, it would be an anomalous condition of the law that would justify or excuse the commission of a felony against the person or property of an entirely innocent person because the person doing the deed had reason to fear, and did fear, not an imminent and immediate danger to his life, but a future and remote danger, and one that in the very nature of things could be readily averted by innocent methods.

The fact that in this case the person committing the deed, and claiming that it was done under a compulsion that excuses him from the criminality of the act, is a minor cuts no figure in the proper construction of the statute. It is general and applicable to persons of any age. While the language is not as exact as it might be, it must be given a reasonable meaning so as to effectuate the design of the legislature

and to promote justice. We would be loath to believe that the legislature intended to excuse one from responsibility for atrocious felonies, committed against the property or person of an innocent person, under a fear, by whatever threats induced, that a refusal would in the future and at some remote place endanger his life. Such a danger in the very nature of things could be easily avoided by innocent methods. It would require very explicit language to induce us to believe that the legislature intended to lay down any such monstrous and unjust rule as that any person should be excused from responsibility for an infamous crime when committed under the fear of future and remote danger to life which in the nature of things could be easily avoided.

We agree with the views expressed by the court in *Bain* v. *State*, 67 Miss. 557, [7 South. 408], when it said: "We can conceive of cases in which an act, criminal in its nature, may be committed by one under such circumstances of coercion as to free him from criminality. The impending danger, however, should be present, imminent and not to be avoided. . . . The social system would be subverted, and there would be no protection for persons or property, if the fear of man, needlessly and cravenly entertained, should be held to justify or excuse breaches of the law."

So, too, in *People* v. *Repke*, 103 Mich. 459, [61 N. W. 861], it was said: "Threats of future injury do not excuse any offense. The necessity which will excuse a man for breach of law must be instant and imminent."

Respondent has cited no case that supports its contention. There are none. *Burns* v. *State*, 89 Ga. 527, [15 S. E. 748], a case arising under a statute similar to ours, lays down the rule directly contrary to the contention of respondent in the case at bar. The report of the Georgia case is somewhat meager, and can only be fully understood by a somewhat careful study of the case. The decision of the court is in the form of a syllabus, preceding the statement of the case. Under the code of that state (section 4303), it is provided that "A person committing a crime or misdemeanor under threats or menaces, which sufficiently show that his life or member was in danger, or that he had reasonable cause to believe, and did actually believe, that his life or member was in danger, shall not be found guilty; and such threats and menaces be-

ing proved and established, the person compelling by said threats and menaces the commission of the offense shall be considered a principal, and suffer the same punishment as if he had perpetrated the offense.'' The first part of this section excusing the person coerced is not materially different from our statute so far as it relates to the imminency of the danger. The defendant Burns was convicted of murder, and the principal witness against him was his stepmother. It is apparent from the statement of the points involved, and the instructions given and refused, that this witness had previously given false testimony at the coroner's inquest, and which she claimed was given under coercion, and also that she had testified to a state of facts upon the final trial which would make her an accomplice unless she acted under coercion and fear. Upon each point the trial court gave an instruction which ignored the necessity of the fear being of a present impending danger. and refused to give a requested one including this element. The court said: ''According to section 4303 of the code, in order for duress or fear produced by the threats or menaces to be a valid legal excuse for doing anything which would otherwise be criminal, the act must have been done under such threats or menaces as show that the life or member was in danger, or that there was reasonable cause to believe and actual belief that there was such danger. *The danger must not be one of future violence, but of present and immediate violence at the time of the commission of the forbidden act.* Thus, where the forbidden act is perjury by a witness at a coroner's inquest, the danger of death or dismemberment at some future time, in the absence of all danger at the time of testifying, will not excuse. . . . A person who aids and assists in the commission of a crime, or in measures taken to conceal it and protect the criminal, *is not relieved from criminality as an accomplice* on account of fear excited by threats or menaces, unless the danger be to life or member, *nor unless that danger be present and immediate* as above announced touching fear under the influence of which perjury is committed.'' (Italics are ours.)

We understand this case as clearly holding that a person is not relieved of the responsibility for a criminal act because he acted through fear produced by threats, unless the fear was of immediate and imminent danger.

The case is cited as authority for this doctrine in the commissioners' note to the Penal Code of Georgia (adopted in 1895), under section 41, which is a re-enactment of section 4303, and also in the notes to *Arp* v. *State,* in 19 L. R. A. 359.

We think the Georgia case is directly in point, and is grounded in sound reason and enlightened justice.

Inasmuch as it is clear that the witness, John B. Martin, had no fear of immediate and imminent danger to his life, but only a fear that defendant, at some future time and at some remote place, would kill him, all the evidence now under consideration, admitted as tending to show the existence and reasonableness of such fear, was improper. None of it should have been admitted, and all of it should have been stricken out.

Neither were the errors thus committed cured by the subsequent introduction by defendant of the testimony of Johnion to the effect that John B. Martin had confessed to him to committing some of the same crimes and implicating the defendant therein. The circumstances under which this testimony was introduced bear little resemblance to the facts in the case of *People* v. *Silvers,* 6 Cal. App. 69, [92 Pac. 506], cited by respondent; but aside from this the Johnion testimony did not cover anywhere near all the matter erroneously admitted.

Other evidence equally objectionable, tending to show the possession by defendant at the time of her arrest (which occurred about ten months subsequent to the commission of the crime for which she was being tried), of various poisons, none of which had any connection with the crime committed at the Ogden residence, was admitted over the objection of defendant.

Evidence of obscene letters and writings of defendant in no way relating to the dynamiting of the Ogden house were admitted. This evidence was very prejudicial to defendant, as it tended to show her to be a most depraved and vicious woman.

However depraved or vicious she might be, she was entitled to be tried only for the crime charged against her; and upon the issue presented by her plea of not guilty only such testimony as was relevant to such issue should have been

admitted. The evidence as to her brutal treatment of the witness, John B. Martin, and as to her guilty connection with the numerous felonies and misdemeanors, had no relevancy to the question as to whether or not she was guilty of the crime of dynamiting the house of Judge Ogden. It is not pretended that it tended to prove that she committed the crime for which she was being tried. Its ostensible purpose was to prove that John B. Martin was not criminally responsible for his acts in placing and exploding the bomb at the Ogden home. But as we have shown, it was not admissible for this purpose. Its character was such as to greatly prejudice the defendant with the jury. The defendant had the right to have all such irrelevant matter excluded from the jury. When, as in this case, irrelevant testimony has been admitted, and is of such a character as necessarily to be prejudicial to defendant, a new trial must be granted. (*People* v. *Carpenter,* 136 Cal. 393, [68 Pac. 1027]; *People* v. *Williams,* 127 Cal. 216, [59 Pac. 581]; *People* v. *Arlington,* 123 Cal. 356, [55 Pac. 1003]; *People* v. *Lynch,* 122 Cal. 503, [55 Pac. 248].)

Complaint is also made that defendant was compelled to answer questions upon cross-examination not relating to matters about which she had testified in chief. In some respects this complaint seems to be well founded, but as to most of the questions the answers were such as to preclude any inference of prejudice thereby. In view of the necessity for a new trial, we only feel it necessary upon this point to call attention to the rule for cross-examination of defendant as laid down in *People* v. *Gallagher,* 100 Cal. 466, [35 Pac. 80], *People* v. *Arrighini,* 122 Cal. 121, [54 Pac. 591], and *People* v. *Schmitz,* 7 Cal. App. 359, [94 Pac. 407, 419].

The judgment and order are reversed and the action remanded for a new trial.

Cooper, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 28, 1910.