[Crim. No. 323.   First Appellate District.—June 20, 1912.]

## THE PEOPLE, Respondent, v. ISABELLA J. MARTIN, Appellant.

CRIMINAL LAW—DYNAMITING DWELLING—TESTIMONY OF ACCOMPLICE— SUFFICIENT CORROBORATION.—Upon a charge against the defendant for dynamiting a dwelling, where it clearly appears that the chief witness for the prosecution was an accomplice in the crime, whose testimony required corroboration, yet it is held that the evidence offered and received upon the whole case reveals ample corroboration of his testimony, which fully warrants the verdict of the jury convicting the defendant of the offense charged.

ID.—RULE AS TO CORROBORATING EVIDENCE UPON TESTIMONY OF ACCOMPLICE.—The statute does not require that the evidence necessary to corroborate the testimony of an accomplice shall tend to establish the precise facts testified to by the accomplice, and strong corroborative evidence is not necessary to support a judgment of conviction founded upon the testimony of an accomplice. Even though the circumstances constituting the evidence offered and received in corroboration of the testimony of an accomplice be slight, such evidence is nevertheless sufficient to meet the requirements of the

law if, in and of itself, it tends to connect the accused with the commission of the offense.

ID.—PROPER TESTIMONY OF ACCOMPLICE THAT DEFENDANT INDUCED CRIME.—The accomplice was properly permitted to testify, over defendant's objection, that on the evening of the crime defendant said to him that she would hit him on the head with a sledge hammer, and then put a stick of powder under him and blow him up, if he failed to explode the dynamite on Judge Ogden's porch, as she directed. This evidence was relevant and material as tending to show that she induced the commission of the crime, and her guilty participation therein, notwithstanding it may also have tended to prejudice the defendant before the jury, by showing that she had little regard for human life, and possessed an abandoned and malignant heart.

ID.—ABSENCE OF ERROR UPON SECOND TRIAL—SUPPORT OF VERDICT AND JUDGMENT.—Notwithstanding the reversal of the judgment upon a first trial for incompetent evidence, yet, upon a careful reading of the whole record, the appellate court is satisfied that the second trial of the defendant was free from error, and that the evidence upon the whole case is amply sufficient to support the verdict and judgment against the defendant.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. Wm. S. Wells, Judge.

The facts are stated in the opinion of the court.

Isabella J. Martin, Appellant, *in propria persona.*

U. S. Webb, Attorney General, and John H. Riordan, Deputy Attorney General, for Respondent.

LENNON, P. J.—The defendant in this case, Isabella J. Martin, was charged, in an information filed in the superior court of the county of Alameda, with the crime of felony as defined in section 601 of the Penal Code. The information in substance charges that on the nineteenth day of March, 1907, the defendant willfully and maliciously deposited and exploded dynamite in a house which was then occupied as a dwelling-house by Frank B. Ogden and his family in the city of Oakland, all with the intent to injure, intimidate and terrify the occupants of said house.

The defendant was convicted and sentenced to life imprison-
ment, and this appeal is from the judgment and from an order
denying defendant's motion for a new trial.

Once before the defendant was convicted of the same offense
upon the same information, but upon appeal to this court the
judgment was reversed and a new trial ordered. (*People* v.
*Martin,* 13 Cal. App. 96, [108 Pac. 1034].)

While the same questions of law upon which the first judg-
ment was reversed are not involved in the present appeal, the
controlling facts upon which the charge against the defendant
was founded and a conviction had are, as shown by the rec-
ords before us, practically the same in both cases; and as the
opinion of this court, written by Mr. Justice Hall, upon the
former appeal contains a clear and concise statement of the
immediate circumstances of the crime and the manner of its
perpetration, we herewith quote and adopt the statement of
facts as therein contained:

"The crime with which defendant was charged was not com-
mitted by her in person, but was in fact committed by John
B. Martin at her instigation, . . . John B. Martin was, at the
time of the commission of the crime, sixteen years of age, and
though he had been reared by defendant from babyhood, he
was not her child. He was the principal witness for the prose-
cution, and testified in detail to all the circumstances of the
commission of the crime, from which it appears that the de-
fendant had for a considerable time before the commission of
the crime contemplated the deed, and with the aid of the
witness had made careful preparation therefor. Her motive
grew out of the result of some litigation which she had had
in a department of the superior court of Alameda county,
presided over by Hon. Frank B. Ogden, although the action
was not finally tried before Judge Ogden. The witness and
defendant discussed the contemplated crime, months before
its commission, at Weaverville, in Trinity county, where de-
fendant had a home and certain mining properties. Early
in January, 1907, they came to Oakland, Alameda county,
where defendant owned a home and other property. Under
the house belonging to defendant, and in which she and the
witness took up their residence, was stored a quantity of
dynamite. This was by the witness taken from under the
house by the direction of defendant, and placed upon a shelf

to dry. Subsequently a portion of it, about twelve sticks, was made into a bomb by the witness and defendant, for the purpose of dynamiting the residence of Judge Ogden. A long fuse was furnished by defendant and carefully prepared for subsequent use. A bicycle was rented by defendant to enable the witness to escape·from the scene of the intended crime. Careful preparations were made to enable an *alibi* to be proved for the witness in case they were suspected or charged with the crime, and on the night of the 19th of March, 1907, the witness, at the direction of defendant, took the bomb and fuse to the residence of Judge Ogden, about a mile distant from the residence of defendant, in which she remained, and after observing that the residence of Judge Ogden was then occupied by members of his family (wife, four children and a maid), placed the bomb upon the front porch of the house, carefully adjusted the fuse, lighted the same, mounted his wheel and rode away to his home, where the defendant awaited his coming. The explosion occurred before the witness reached his home; and though badly injuring the dwelling of Judge Ogden, did no harm to the unsuspecting members of the household sheltered therein, other than such as may have arisen from fright and nervous shock at the dastardly crime attempted against their home and possibly lives.''

In support of her present appeal the defendant urges the insufficiency of the evidence to support the verdict, and insists also that the trial court erred to her prejudice in its rulings upon the admission and rejection of evidence. Defendant's opening and closing briefs contain in the aggregate some five hundred pages of typewritten matter, which is devoted chiefly to a discussion of the weight of the evidence and an attack upon the credibility of the several witnesses who testified upon behalf of the people. It would serve no useful purpose to set out in detail the many minute particulars in which the defendant claims the evidence to be insufficient to support the verdict. It will suffice to say that defendant's contention in this behalf is made up largely of references to slight and immaterial discrepancies and contradictions appearing· in the testimony of some of the witnesses, all of which should have been, and doubtless were, upon the argument of the case, called to the attention of the jury, and presumably· duly weighed and considered by them when deliberating upon

the question of the guilt or innocence of the defendant. In any event, the credibility of the witnesses was, in the first instance, a matter solely for the jury to determine; and finally, upon the hearing of the defendant's motion for a new trial it was the right and duty of the trial judge, in weighing the sufficiency of the evidence upon which the verdict was had, to consider the credibility of the witnesses. The trial judge's determination of the question of such credibility is conclusive upon us.

Of the many objections made by the defendant to the sufficiency of the evidence to support the verdict but one is worthy of more than passing notice; and that involves the point that the evidence shows the chief witness for the people, John B. Martin, to be an accomplice of the defendant, and that his testimony was not sufficiently corroborated to warrant a conviction.

It must be conceded that the evidence shows clearly and conclusively that this witness was an accomplice of the defendant; but we are satisfied, after a careful reading of the record, that the evidence offered and received upon the whole case reveals ample corroboration of his testimony and fully justifies the verdict of the jury.

Among the many matters and things testified to by other witnesses which, as a whole, tended strongly to support the testimony of John B. Martin, which was to the effect that the defendant instigated the crime and actively participated in its preparation, may be instanced the fact that shortly after the explosion there was found on the Ogden premises a copy of the "Bulletin," a San Francisco evening newspaper, upon which was written the words "goode man." After her arrest the defendant was shown the newspaper by Detective Hodgkins, and asked if that inscription thereon was in her handwriting. The defendant denied all knowledge of the newspaper, and disputed that the handwriting thereon was hers. It was subsequently established on the trial by competent and sufficient evidence that the handwriting on the newspaper was that of the defendant. The circumstance that a newspaper containing the handwriting of the defendant was found at the scene of the crime shortly after the explosion may not in and of itself have been entitled to any weight as a piece of evidence; but when considered in conjunction with the de-

fendant's denial of all previous knowledge of the paper or the handwriting thereon, it had a strong tendency, we think, to show a consciousness of guilt on the part of the defendant, and to that extent at least tended to connect the defendant with the commission of the crime, and thereby corroborate the testimony of John B. Martin that just previous to the commission of the crime he had wrapped the dynamite which caused the explosion in a copy of the "Bulletin" at the direction of the defendant.

Other evidence appearing in the record which also tends to connect the defendant with the commission of the offense charged against her is to be found in the testimony of several witnesses, which may be summarized as follows:

The defendant, on more than one occasion previous to the explosion, openly manifested her malice and ill-will toward Judge Ogden, which finally culminated in the threat that when she got through with the civil case then pending in the department of the superior court of Alameda county over which Judge Ogden presided, she would "get" him. The defendant was familiar with the use of dynamite; and some time previous to the Ogden explosion had purchased in Weaverville, Trinity county, twenty-five pounds of dynamite, a portion of which, it was claimed by the prosecution, she wrapped in a mattress and shipped to her home in Oakland. Shortly after the explosion the defendant's home in Oakland was searched by detectives, and they discovered secreted in various parts of the house previously pointed out and designated by John B. Martin not only dynamite and dynamite caps, but a piece of fuse similar to the fuse found upon the Ogden premises after the explosion. The defendant at first denied any knowledge of the fuse found in her home, but subsequently admitted to the detectives that it belonged to her.

Added to these and to the many other circumstances revealed by the record which point to the guilt of the defendant is the fact that some months after the explosion an anonymous letter was received by Judge Ogden, wherein the writer, referring to the dynamiting of his home, stated among other things that Judge Ogden was "nowhere near the true solution of the perpetrator of the dastardly deed. It was not done to revenge the cause you suspect, for I myself heard just such an attack planned and discussed, and this was carried

out just as it was planned. It was not their intention to kill you then, only to cause you intense suffering by seeing your family and home destroyed, and your turn will come later on. . . . When you pass into that other life you will see that is why the avenger is following hard on your path, only waiting for time and strength to carry out their hellful designs. . . . I have no means of knowing when the former attempt is to recur, for I could not swear they did it, but it was all carried out just as I heard it planned and decided on.''

When confronted with this letter by the detectives the defendant denied all knowledge of it, and expressly declared that it was not in her handwriting. Upon the trial, however, it was fully established by expert evidence that the letter was written by the defendant.

The statute does not require that the evidence necessary to corroborate the testimony of an accomplice shall tend to establish the precise facts testified to by the accomplice; and strong corroborative evidence is not necessary to support a judgment of conviction founded upon the testimony of an accomplice. Even though the circumstances constituting the evidence offered and received in corroboration of the testimony of an accomplice be slight, such evidence is nevertheless sufficient to meet the requirements of the law if, in and of itself, it tends to connect the accused with the commission of the offense. (*People* v. *Barker,* 114 Cal. 617, 620, [46 Pac. 601] ; *People* v. *Cleveland,* 49 Cal. 577; *People* v. *Clough,* 73 Cal. 348, [15 Pac. 5].)

Surely the several circumstances hereinbefore enumerated in and of themselves tended, in some slight degree at least, to connect the defendant with the crime charged against her, and when taken altogether, abundantly corroborate the testimony of John B. Martin not only that the crime was instigated by her, but that she actively aided and abetted its commission.

The defendant complains of the ruling of the trial court whereby the witness, John B. Martin, was permitted, over the objection of the defendant, to narrate a conversation which the witness had with the defendant on the evening of the crime and shortly before its commission, wherein the defendant in effect stated to the witness that she would hit him on the head with a sledge hammer and then put a stick of powder under him and blow him up, if he failed to explode the dyna-

mite on Judge Ogden's porch as she had directed. There was
no error in permitting the witness to so testify. Clearly, any-
thing that the defendant may have said which had a tendency
to show that she induced the commission of the crime charged
against her was relevant and material to the issue of her guilty
participation therein; and being relevant and material for
that purpose, such testimony was rightfully admitted in evi-
dence, notwithstanding that it may also have tended to preju-
dice the defendant in the eyes of the jury by showing that she
had little, if any, regard for human life, and that she pos-
sessed an abandoned and malignant heart.

There is no merit in the defendant's contention that the
former judgment of conviction against her was reversed by
this court because of the admission upon the first trial of tes-
timony similar to that now complained of. This contention
of the defendant is based upon an erroneous conception of the
scope and effect of the decision of this court rendered upon
the former appeal. The theory of the prosecution upon the
first trial was that John B. Martin was not an accomplice of
the defendant in the ordinary legal acceptation of the term,
because, as it was claimed, he was inspired and compelled to
commit the crime charged through fear of immediate death
resulting from the duress and menace of the defendant. From
this it was argued and successfully maintained upon the first
trial that although John B. Martin had in fact committed the
crime, nevertheless, having committed it under the compul-
sion of the defendant, the law excused him from the crimin-
ality of the act, and he could not, as a matter of law, have been
prosecuted and convicted as a principal, from which it fol-
lowed that he was not an accomplice whose testimony came
within the rule requiring corroboration.

In support of this theory the prosecution was permitted to
show over the objection of the defendant that, by previous
persistent intimidation and threats, the defendant had so com-
pletely dominated the will of the witness, John B. Martin,
that he had at various times, prior to the dynamiting of the
Ogden residence, committed numerous misdemeanors and
felonies at the instigation of and under the coercion of the
defendant. This court, in reviewing the evidence presented
by the record on the former appeal, in effect found that there
was no foundation for the claim that the witness, John B.

Martin, was compelled to commit the crime charged while act-
ing under the duress and menace of the defendant; but that,
on the contrary, it was clearly shown that when he committed
the crime he was not in any immediate danger to his life at the
hands of the defendant and that the defendant's threat of
a future, remote and contingent infliction upon him of death
or great bodily harm did not in law constitute such duress and
menace as would excuse the crime and dispense with the neces-
sity for corroboration of his testimony.

No question of duress and menace was involved in the evi-
dence offered and received in support of the prosecution's
case upon the second trial. On the contrary, the prosecution
proceeded solely upon the theory that John B. Martin was
an accomplice of the defendant and that his testimony was
fully corroborated. True, there was quoted in the former
opinion of this court an excerpt from the testimony of John
B. Martin given upon the first trial, which shows substantially
the same testimony now complained of; but it is clear upon
a first reading of our former opinion that the quotation of
the testimony referred to was made not because it was claimed
or held that the admission of that precise piece of testimony
was error, but solely for the purpose of making clear and
emphasizing the point that in dynamiting the house of Judge
Ogden the witness John B. Martin could not have been actu-
ated by any fear of immediate danger to his life at the hands
of the defendant, and that the only fear, if any, which im-
pelled him to commit the crime was the fear that the defend-
ant might at some future time, and in some remote place, kill
him if he failed to do her bidding. Such fear, it was held,
did not constitute duress to such an extent, and within the
meaning of section 26 of the Penal Code, that it could be in-
voked as a valid legal defense for the doing of an act which
was otherwise criminal. Accordingly, it was further held that
all of the evidence upon the former trial, relating to the de-
fendant's brutal treatment of the witness John B. Martin, and
her instigation of and active participation in numerous other
crimes, had not the slightest relevancy to the question of her
guilt or innocence of the crime for which she was being tried,
and that therefore the defendant's objection to such testimony
should have been sustained and her motion to strike out
granted.

Numerous other points, many of them relating to the rulings of the trial court upon the admission and rejection of evidence, are presented and discussed in a haphazard way throughout the voluminous briefs of the defendant. Upon a patient and painstaking investigation of the record we find that some of the objections relied upon were not made at the trial in the lower court, and that all of them are without merit and unworthy of detailed mention or discussion. We are satisfied upon a careful reading of the whole record that the second trial of the defendant was free from error, and that the evidence upon the whole case is amply sufficient to support the verdict and the judgment.

It is therefore ordered that the judgment and the order appealed from be, and they are hereby, affirmed.

Hall, J., and Kerrigan, J., concurred.