[Crim. No. 1585. Second Appellate District, Division Two.—January 21, 1928.]

THE PEOPLE, Respondent, v. FREDERICK TUBB, Appellant.

Milton H. Silverberg for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

CRAIG, J.—The appellant and one Erbert Gottwald were jointly charged with having committed the crime of robbery in the county of Los Angeles on or about July 6, 1927. Gottwald pleaded guilty and testified as a witness for the People. Tubb was convicted of robbery of the second degree, moved for a new trial, which was denied, and appeals from the judgment and from the ruling on said motion.

It appears that appellant at the time of the alleged offense had been employed as a general handy-man by one Weitzman, the owner of a hotel or apartment house on Beacon Street, and of a residence on Fifth Avenue, in Los Angeles city. Late in the afternoon of the date last mentioned, while the Weitzman family and appellant were seated at the dinner-table in the Fifth Avenue house, Gottwald entered, commanded them to put up their hands, took $80 and a check from Weitzman's person, Tubb tied their hands with rope, placed a blue bandana around the head and over the mouth of each of the family, and was then in turn likewise tied by Gottwald, who entered an adjoining room and closed the door; that Gottwald opened the door several times, threatening to shoot if anyone should move, and finally escaped. Weitzman freed himself from the rope and, upon searching for his revolver, discovered that Tubb had taken it. Weitzman then started in an automobile in search of Gottwald, whom he overtook in the near vicinity, and with the assistance of other persons returned him to the house, where detectives were then waiting, and placed him under arrest. About two days later appellant was arrested, and upon being questioned at the police station, admitted to the officers that on July 1, 1927, he had planned the holdup; that on the 6th he caused Gottwald to hide in the garage near by, and that when the family were seated at the table appellant went to the garage and gave a signal, and returned.

Gottwald testified that appellant told him the Weitzmans were millionaires, and that he would like to get twenty-five thousand dollars; that appellant and the witness met at a theater, in a restaurant, a mission, and in one of the city parks, and that Tubb made all of the plans, explained them, and rehearsed Gottwald on each occasion, furnished him with funds, instructed him to buy a gun, and "asked me if I was game to come out there." This witness swore, however, that he did not purchase a revolver, but procured a cigarette case which resembled one, which he ultimately used in the holdup, and as to this fact there is no controversy. Upon cross-examination Gottwald was asked if it was not "planned between you and Tubb that this was only going to be a fake robbery; he was going to assault you and chase you out of the house, and let you get away?" To which he replied, "Not as far as I know.". Counsel for appellant then asked: "As far as you heard, it was going to be a real robbery? A. Yes."

Appellant's testimony and his whole contention at the trial was that he feared he was not in as good standing with his employers as he desired to be, although he had worked for them about eighteen months, and was trusted by them; had the keys "to every door in the building," including the basement, and on many occasions was left alone at their home. Tubb did not attempt to deny the occurrences above recited, as to the actual robbery, and as detailed by Weitzman, Mrs. Weitzman, and Gottwald, but firmly maintained that "it was all a jest; it was a myth," or was intended to be; that it was planned to be a "fake robbery," in which Gottwald was to be "frustrated eventually, and Gottwald was to get away from the house"; that he "did not imagine Mr. Weitzman would ever think it would be otherwise; my devotion on behalf of those people being my sole mission; I did not entertain any intention of robbery; I did not picture myself as an ostensible hero, but I visualized what I would do if such an occasion should ever arise." He said, "When I saw the transformation of Mr. Weitzman's money to Gottwald's pocket, that made me fear an attempt to rob, and putting aside discretion I charged him, and during the scuffle he hit me on the head

with the gun, cut the right side of my head; it wasn't much of a wound.''

The principal ground assigned for reversal arises from alleged errors of the trial court in admitting in evidence certain confessions of appellant, which were later stricken out and the jury instructed to disregard them. Weitzman swore that he had a conversation with appellant at the police station, and before being allowed to state it from the witness-stand defendant's counsel requested permission to examine the witness on *voir dire*, which the court refused, stating that counsel might cross-examine him at the proper time. Weitzman thereupon related what amounted to a complete confession, but said that he remarked to appellant at the time: ''Why don't you tell the truth? I know the whole story, what has happened. You might as well come clean with it and tell the truth, and it will be easier for you.'' The trial court, in view of the apparent promise of leniency by Weitzman, struck out the confession so made, as well as others claimed to have been made to police officers thereafter.

Appellant strenuously insists, and cites authorities tending to support his position, that in denying him the right to examine the witness on *voir dire*, and in admitting the alleged confessions, the damage was done, and that it became too late to cure the error by striking out such statements. If this be conceded to be a sound argument, still, the details of the robbery were placed before the jury. not only by the testimony of Weitzman, Mrs. Weitzman, and Gottwald, but by the admissions of the defendant upon the stand. Therefore, the sole inquiry for the jury was as to appellant's intentions, which would determine whether his acts constituted a ''jest'' or a robbery. Tubb swore, and Weitzman admitted, that the defendant positively declared it to be but an attempt to obtain the employer's ''good graces.'' All of the evidence plainly indicated, and appellant admitted, that he planned the holdup. Hence, neither confession prejudiced him. Such facts as appellant's previous meetings with Gottwald, the purchase of meals at a restaurant, supplying Gottwald with money, the latter's presence in the garage, the robbery and Tubb's part in it, Gottwald's escape with Weitzman's eighty dollars and its

subsequent recovery, all are verified by Tubb's testimony upon the trial. He reiterated his good intentions in staging the holdup, which he admitted having instigated. It would be idle to discuss at length, the contention that appellant's accomplice was not corroborated with sufficient evidence to support the verdict and judgment. The question of intent was stressed to the exclusion of all other considerations, and as to that the jury may well have concluded that the defense was novel but not meritorious, and this we think is a fair estimate of it.

█ The trial court committed no error in denying a motion that the case be dismissed, made by appellant's counsel, when the prosecution rested. █ The corroboration required to support the testimony of an accomplice may be slight, and although entitled to but little weight, standing alone, it is sufficient, if it tends to connect the defendant with the commission of the crime. (*People* v. *Wilson*, 76 Cal. App. 688 [245 Pac. 781]; *People* v. *Martin*, 19 Cal. App. 295 [125 Pac. 919]; *People* v. *Garwood*, 11 Cal. App. 665 [106 Pac. 113]; *People* v. *McLean*, 84 Cal. 480 [24 Pac. 32].) █ Some of the corroborating evidence in this instance is that Tubb arranged to have the Weitzmans present at the Fifth Avenue residence upon this occasion, though they did not reside there, and had not been there for a period of two weeks; when Gottwald held them up, Tubb bound and gagged Weitzman, Mrs. Weitzman, and their daughter; later Tubb apparently pretended to interfere with Gottwald, but Tubb was the one who demanded the key to the safe, and he made no effort to release either of the victims from their bonds. Appellant's conduct as detailed by them as witnesses was susceptible to a conclusion that his efforts to aid them were feigned. After Gottwald had departed Weitzman's revolver was found to be missing from its proper place in a drawer, and it developed that Tubb had it in his possession; when told by Weitzman to fire it, Tubb at first failed to do so, at the time when Gottwald was running away; after Weitzman had repeatedly demanded that Tubb shoot, and appellant had stated that it would not work, he finally did fire, but Weitzman testified that Tubb shot in the air. There are other incidents corroborative of Gottwald's testimony, but these are amply sufficient.

No other points requiring attention are advanced by appellant.

The judgment and order denying a new trial are affirmed.

Works, P. J., and Thompson, J., concurred.