[Crim. No. 3519.  In Bank.—October 18, 1932.]

THE PEOPLE, Respondent, v. Z. KAWAMOTO, Appellant.

Tom Okawara for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

WASTE, C. J.—In an information filed by the district attorney of the county of Tulare, the defendant was charged with having murdered one Tomo Mukai. At the conclusion of the trial the jury brought in a verdict finding the defendant guilty of murder in the first degree. The verdict being without recommendation, the court below entered judgment imposing the death penalty. Defendant appeals from the judgment and from the order denying his motion for new trial.

The evidence adduced by the prosecution tends to show that Tomo Mukai, the deceased, was living with her husband on a farm near Reedley, in Tulare County. At about 6:30 o'clock on the evening of August 7, 1931, the husband of deceased left for Fresno to deliver a truckload of melons. One M. Miyamoto, who had assisted with the picking of the melons, remained at the farm after the departure of the deceased's husband. When called as a witness by the People, Miyamoto testified in substance that the defendant came to the home of the deceased shortly after 9 o'clock on the evening in question; that, after engaging in conversation for a few minutes, the defendant and deceased left the house; that shortly thereafter two or three pistol shots were fired, whereupon the deceased called out, "Kill me, give me help"; that the witness ran out of the house just as the deceased ran in again pursued by the defendant; that from the outside of the house he [the witness] peeked through a window and saw the defendant standing before the deceased with a gun in one hand and a knife in the other hand; that he heard defendant say, "I kill you, and I will be punished; I am going to prison for ten years"; and that, as the witness crossed the road to summon the help of neighbors, he thought he heard two more shots.

A neighbor, called by the prosecution, testified that she heard two series of pistol shots on the night in question,

and that Miyamoto, the witness just above referred to, came to her house seeking assistance. The autopsy surgeon testified that the body of the deceased contained several stab or knife wounds and a bullet wound, the latter, in his opinion, causing death. There is also evidence that the defendant had purchased a hunting knife two days prior to the homicide. The officers summoned to the scene of the crime testified that they found the defendant and the deceased lying on the floor, the former with a bullet wound in his head, and the latter apparently dead. In response to certain questions asked by one of these officers, the defendant, though in a weakened condition, stated that he had killed the deceased because "she fooled me . . . I think before she be my wife". At the hospital defendant informed the doctor in attendance that "she fooled me, I kill her". The officers found a gun in close proximity to the bodies, and removed a hunting knife, having blood on its blade, from the defendant's person.

The defendant, in addition to calling one witness to testify to his reputation for peace and quiet, took the stand in his own behalf, and narrated a story tending to indicate that Miyamoto, the state's principal witness, was in fact the perpetrator of this heinous crime. He testified, in substance, that as he approached the deceased's home on the evening in question the lights were extinguished; that he entered, and, upon receiving no response to his salutation, turned on the lights; that he found the deceased in a bedroom, and that Miyamoto, the state's witness, subsequently emerged from another room; that defendant inquired as to the reason for Miyamoto's presence in the house; that an altercation with Miyamoto ensued; that the deceased prevailed upon defendant to leave the house, escorting him to his automobile; that while defendant and the deceased were outside the house they heard shots; that upon returning to the house they found Miyamoto in the kitchen with a revolver in his hand; that Miyamoto, addressing the defendant, said: "I have this gun here; I want to fix you"; that defendant thereupon took out his hunting knife in order to defend himself; that there was a struggle between the two men, with the deceased sandwiched in; that shots were fired, and the deceased and defendant crumpled to the floor. He did not remember seeing any

officers in the house after the struggle, nor could he recall making any statement or confession to them.

Upon this appeal the defendant urges that the verdict is not supported by the evidence. He contends that the record is destitute of evidence tending to show a motive for the crime, and that the story narrated by Miyamoto, the state's principal witness, is unbelievable and should be rejected.

In our opinion the above excerpts from the evidence are amply sufficient to disclose a motive for the commission of the crime of which the defendant stands convicted. However, proof of motive is not indispensably necessary. As stated in *People* v. *Tom Woo*, 181 Cal. 315, 328 [184 Pac. 389], "the presence or absence of motive is essentially a question of fact, and, like any other fact, is not necessary to be proved if the crime can otherwise be established by sufficient competent evidence. So . . . the absence of proof of motive is a fact to be reckoned on the side of innocence, but if the proof of guilt is nevertheless sufficient to overthrow the presumption of innocence, the appellants must stand convicted, notwithstanding no motive has been shown." (See, also, *People* v. *Northcott*, 209 Cal. 639, 643 [70 A. L. R. 806, 289 Pac. 634]; *People* v. *Kelley*, 208 Cal. 387 [281 Pac. 609].)

We cannot follow the defendant's suggestion and dismiss from consideration Miyamoto's testimony as to the manner of the perpetration of the homicide. True, his story is in sharp conflict with that related by the defendant while on the stand, but "the credibility of the witnesses was, in the first instance, a matter solely for the jury to determine; and finally, upon the hearing of the defendant's motion for a new trial it was the right and duty of the trial judge, in weighing the sufficiency of the evidence upon which the verdict was had, to consider the credibility of the witnesses. The trial judge's determination of the question of such credibility is conclusive upon us." (*People* v. *Martin*, 19 Cal. App. 295, 299 [125 Pac. 919]; *People* v. *Tom Woo*, *supra*, p. 326; *People* v. *Ward*, 14 Cal. App. 143, 144 [111 Pac. 265].)

There is an abundance of substantial evidence to justify the verdict in the instant case. All conflicts in the evidence have been resolved against the defendant by the jury in

the first instance and by the trial court upon its denial of the motion for a new trial. The evidence being sufficient to support the verdict, it is not our province to weigh the same, nor to pass upon the credibility of the witnesses. (*People* v. *Tom Woo, supra; People* v. *Ward, supra.*)

During the *voir dire* examination of one of the jurors the trial court sustained an objection to a question propounded by the defendant having to do with the possible effect, if any, upon the juror of evidence tending to show the existence of an illicit relationship between the defendant and the deceased in her lifetime. At no time during the trial of the cause did the defendant offer any evidence of such illicit relationship. He now complains that the ruling of the court below on the *voir dire* examination of the juror constituted prejudicial error, and that such ruling precluded and dissuaded him from offering evidence along this line during the trial. Assuming the evidence to have been admissible, a point we need not decide, its rejection could not have prejudiced the defendant's cause. Evidence of intimacy between the defendant and deceased would not have served to mitigate the gravity of the crime, nor reduce the degree thereof. Regardless of the relationship existing between the defendant and his victim, the homicide perpetrated under the circumstances disclosed by the prosecution and accepted by the jury, constituted murder in the first degree. Therefore, the error in the ruling, if any, could not have been prejudicial, and, under section 4½ of article VI of the Constitution, would not require a reversal. Moreover, we are inclined to the opinion that defendant's complete failure to *offer* any evidence as to such relationship, assuming the same to be admissible, was, in effect, an acquiescence in the trial court's ruling made, not upon the offer of evidence, but upon the *voir dire* examination of the jurors. In the absence of at least an offer of such proof, defendant should not now be heard to complain that he was foreclosed from introducing the evidence.

We have read the entire transcript of the evidence, and find nothing approximating prejudicial error in the trial court's rulings governing the admission and rejection of evidence. Defendant's second and final contention is, therefore, also devoid of merit.

From what has been said, it necessarily follows that the judgment and order appealed from must be, and each is, hereby affirmed.

Preston, J., Langdon, J., Curtis, J., Shenk, J., Seawell, J., and Tyler, J., *pro tem.*, concurred.