**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JOSEPH P. SHELTON,

Petitioner,

v.

JOHN C. MARSHALL and ATTORNEY
GENERAL OF THE STATE OF
CALIFORNIA,

Respondents - Appellees.

No. 13-15707

D.C. No. 4:10-cv-01100-PJH

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, Chief District Judge, Presiding

Argued November 20, 2014
Submitted August 7, 2015
San Francisco, California

Before: THOMAS, Chief Judge and REINHARDT and CHRISTEN, Circuit
Judges.

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

In an opinion filed concurrently with this disposition, we order the writ granted with respect to Joseph Shelton's conviction for the first-degree murder of Kevin Thorpe on the ground that the suppressed evidence regarding Norman Thomas was material to that conviction. We hold here, however, that the evidence of the prosecution's secret deal with Thomas was not material with respect to Shelton's convictions for the second-degree murder of Laura Craig, kidnapping, or theft. There is no reasonable probability that had Thomas's testimony been omitted or had Thomas been impeached by evidence of his secret deal with the prosecution, the result of the proceedings would have been different with respect to those counts. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

1.    *Kidnapping convictions.* There was overwhelming evidence in the record apart from Thomas's testimony of Shelton's intentional participation in the kidnapping of both Thorpe and Craig. Thomas's testimony differed from Shelton's with respect to what was said in the truck before the kidnapping took place, but Shelton himself testified that he drove the truck to his property behind the hijacked victims' car; that he drove the victims to his cabin; and that he stayed with them while Thomas and Silva were absent.

Although Thomas's testimony contradicted Shelton's trial testimony that he was intoxicated during the kidnappings, there was not a reasonable probability that

had Thomas been impeached by the evidence of the secret deal, the jury would have accepted an intoxication defense to the kidnappings. Shelton himself testified that the drugs he was on the night of the kidnapping would not "mess you up . . . to the point of not knowing what's going on."

Nor was there a reasonable probability that, had Thomas been totally impeached, the jury would have accepted a coercion defense to the kidnappings. This defense required a threat of immediate, rather than future, danger to one's life. *People v. Martin*, 108 P. 1034, 1037 (Cal. Ct. App. 1910). Shelton had an opportunity to leave when he drove the truck behind the victims' car as well as later that evening when Silva and Thomas left him alone in the cabin with Craig. Shelton testified that he did not try to leave because he feared that Silva would kill him and his family, but this was a threat of future—not immediate— danger.

2.      *Second-degree murder*. With respect to the second-degree murder of Craig, the jury instruction correctly stated the applicable law: "the unlawful killing of a human being, whether intentional, unintentional, or accidental, which occurs as a direct causal result of the commission of or attempt to commit . . . the crime of simple kidnapping and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the second degree," including where the murder is committed by a coconspirator in the kidnapping. As explained above, the

3

prosecution's secret deal with Thomas was not material with respect to Shelton's conviction for the kidnapping of Craig. Shelton's testimony that he and Silva were taking the kidnapping victim to meet the head of the Hell's Angels when Silva shot her is sufficient to meet the "direct causal result of a kidnapping" provision. Moreover, Thomas's testimony regarding the shooting of Craig by Silva, as Shelton concedes, was largely consistent with Shelton's own testimony. In light of the fact that murder that was the direct causal result of a kidnapping constituted second-degree murder, there is not a reasonable probability that had Thomas been impeached with evidence of the secret deal, the result would have been different as to the second-degree killing of Craig.

3.     *Theft convictions*. Nor was the suppressed evidence material with respect to Shelton's theft convictions. Shelton was wearing Thorpe's boots when he turned himself in. His fingerprints were on a car stereo removed from the victims' car. On the stand, Shelton acknowledged receiving $100 from Silva the day after the kidnapping. Accordingly, there is not a reasonable probability that had Thomas been fully impeached, the jury would have reached a different result with respect to Shelton's convictions for the thefts from Thorpe and Craig.

**AFFIRMED IN PART.**

4