[Crim. No. 487.  Department Two.—January 25, 1899.]

THE PEOPLE, Respondent, v. CHARLES COMPTON, Appellant.

CRIMINAL LAW—FORGERY—EVIDENCE—TESTIMONY OF ACCOMPLICE—CONSPIRACY—CORROBORATION.—Before a defendant accused of forgery can be convicted upon the testimony of an accomplice, showing a conspiracy between himself and the defendant and several other persons, by means of the alleged forgery, to defraud the corporation named, the testimony of the accomplice must be corroborated by evidence independent of that of the accomplice, showing the existence of the conspiracy to defraud, and the fact that the defendant was a member of that conspiracy.

ID.—CHARACTER OF CORROBORATING WITNESS—QUESTION FOR JURY.—The question as to the character of the corroborating witness, and as to whether or not he was an accomplice, is one of fact for the jury.

ID.—ACTS AND DECLARATIONS OF CO-CONSPIRATOR—ORDER OF PROOF—DISCRETION—EXCEPTION TO RULE.—The order of evidence prescribed by subdivision 6 of section 1870 of the Code of Civil Procedure, that the acts or declarations of a co-conspirator may be received after proof of the conspiracy, is not mandatory; but that section presents the proper order of proof, and it is only in exceptional cases that the court should exercise its discretion to allow a departure therefrom, when the facts from which the conspiracy is to be inferred are so intimately blended with other facts going to constitute the crime that it is difficult to present the evidence in intelligible form without first admitting the testimony of the accomplice.

ID.—INSTRUCTION—LIBERTY TO DISREGARD TESTIMONY—PROVINCE OF JURY. An instruction that the jury are "not at liberty to disregard the testimony of a witness" where they may "believe from the evidence that such witness is corroborated by other competent evidence, and the circumstances in proof in the case," is misleading if the word "disregard" is used as meaning to "refuse to consider"; and if that word is used in the sense of "reject," the instruction is an invasion of the province of the jury, who are the sole judges of the credibility of a witness, and of the weight to be attached to his testimony, and are at liberty to discredit his testimony, or any corroborative evidence thereof, however competent it may be, if they regard it as unworthy of belief.

ID.—UTTERING FORGED INSTRUMENT—ATTEMPT—OVERT ACT—DELIVERY TO AGENT OR CO-CONSPIRATOR—IMPROPER INSTRUCTION.—An attempt to utter or pass a forged instrument by delivery to an agent or co-conspirator, with the design that the agent or co-conspirator shall utter or pass it, is not complete until some overt act is

done by the agent or co-conspirator in uttering or passing it. An instruction that if the defendant "delivered said instrument to any one, knowing it to be forged, with intent to have it uttered, published and passed as a true and genuine instrument, with intent to cheat and defraud," etc., they should find the defendant guilty, is erroneous, as not necessarily including any overt act toward the commission of the crime, other than the mere act of preparation for its commission.

ID.—INSTRUCTION AS TO CORROBORATION OF ACCOMPLICE.—An instruction to the effect that evidence in corroboration of an accomplice "need not tend to establish the precise facts testified to by the accomplice," and that "it is sufficient if such corroborative evidence tends in any way to connect the defendant with the commission of the crime charged," is incorrect in not taking into account the essential condition that the corroborative evidence, standing alone, "without the aid of the testimony of the accomplice," must tend to connect the defendant with the commission of the crime.

ID.—ACCESSARY BEFORE THE FACT—AIDING AND ABETTING—DISJUNCTIVE INSTRUCTION.—In order to hold an accessary before the fact as a principal in case of felony, he must aid and abet in the commission of the offense, though not present. A disjunctive instruction that such an accessary may be charged as a principal, if he aids or abets in the commission of the felony, is erroneous.

TRIAL—CHANGE OF JUDGE—BIAS OR PREJUDICE—AFFIDAVITS—CONSTRUCTION OF CODE—KNOWLEDGE OF JUDGE.—Section 170 of the Code of Civil Procedure, as amended in 1897, contemplates that the question of the bias or prejudice of the judge about to try a case, by reason of which it is claimed that a party cannot have a fair and impartial trial before him, shall be determined wholly from the affidavits and counter-affidavits on file, and the judge is neither to be called upon nor permitted to use his own knowledge of the matter. If it appears from the affidavit or affidavits on file that the party presenting the same cannot have a fair and impartial trial before such judge, and there are no counter-affidavits, and no conflict upon the facts, the duty of the trial judge is plain, and a motion for change of the judge must be granted.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. B. N. Smith, Judge.

The facts are stated in the opinion of the court.

W. H. Shinn, for Appellant.

W. F. Fitzgerald, Attorney General, and Henry E. Carter, Deputy Attorney General, for Respondent.

HENSHAW, J.—The defendant, with others, was charged with the forgery of a deed, with intent to injure and defraud the Columbia Savings Bank. Upon a separate trial he was convicted, and appeals from the judgment and from the order denying him a new trial.

One Ware, who was charged with the offense jointly with Compton, was a witness for the people. He is a self-confessed accomplice, conspirator, and participant in the crime. The scheme, as outlined by his testimony, was the following: Compton secured the description of a piece of land, the title to which stood in L. H. Greene, who was a resident of an eastern state, and was not in California. Ware procured a certificate of title showing the land to be free from encumbrances. Compton prepared a forged deed of this land, naming Ware therein as grantee. The deed was to have been placed upon record, and upon the strength of this record title a loan secured by mortgage upon the land was to be effected. Ware objected to being named as grantee in the forged deed, upon the ground that he could not obtain his wife's signature to a mortgage, but offered to procure and did procure one A. E. Davis, for a consideration agreed upon, to take part in the conspiracy. Compton thereupon destroyed the first deed and prepared or caused to be prepared another, in which Davis was named as grantee. Compton, in the presence of Ware, signed Greene's name to this deed, and Ware signed the name of Williams as witness to the signature of Greene. Compton then left the room with the deed, and returned shortly after with the acknowledgment of a notary attached. The deed was given to Ware. It was placed upon record. Davis made application for a loan, obtained a loan of a thousand dollars upon the security of a mortgage of the property executed by himself and his wife, cashed the check which had been given to him at the bank, retained two hundred and fifty dollars as his share, delivered the rest of the money to Ware, who met Compton in a saloon, and who there divided with Compton the remainder of the plunder. Ware's testimony implicates as participants in the conspiracy, besides himself and Compton, Mrs. M. L. Rein-

holds, who sent Davis with a letter of introduction to secure the loan, J. H. Shields, who procured the certificate of title, P. E. King, the notary public who took the acknowledgment to the false deed, A. E. Davis and Ida M. Davis, his wife, who executed the mortgage.

Ware's testimony being admittedly that of an accomplice and of a conspirator, it became necessary, before Compton could be convicted of the forgery, that this testimony should be corroborated by other evidence "which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense." (Pen. Code, sec. 1111.) And, before he could be convicted of the forgery with the intent to defraud the corporation named, it became necessary to establish, by evidence independent of that of Ware, the existence of a conspiracy to defraud, and the fact that Compton was a member of that conspiracy. (*People v. Irwin*, 77 Cal. 502; *Barclay v. Copeland*, 86 Cal. 483.) The independent evidence upon both of these points is at the best extremely slight. The only evidence besides that of Ware which can be fairly said to tend to connect the defendant with the crime was that of one M. B. Howard. Howard testified that he had given to Compton upon the back of a card a brief description of the lot of land the deed to which was forged. This card appears in evidence apparently coming from the possession of Ware, who testifies that Compton gave it to him as an aid to securing the certificate of title. Howard further testified that, seeking to borrow one hundred dollars from Compton about the time that the false mortgage had been put of record, Compton told him he would let him have a hundred dollars in a few days; "that he was about to turn a mortgage trick for a thousand dollars." Afterward Compton told him "that the parties had run off with the money. He mentioned a man by the name of this man Davis. I suppose he meant A. E. Davis. He didn't mention his initials." He also said that "he had not been able to find them and he guessed they had skipped the country." The witnesses, however, explained that the phrase, "turning a trick" was a common expression of Compton, used by him to indicate any deal or transaction in land or securities by which he realized or expected to realize moneys. He further testified,

that there was never any conversation between them concerning any fraudulent dealings had or to be had with the land; that Compton expressed great surprise when informed that a forged deed and a false mortgage had been made, and insisted that he knew nothing about the matter, and did not receive any money from the transaction.

It is urged that this evidence also was the evidence of an accomplice with Ware, and that it is not of the independent character required to establish proof of the existence of a conspiracy, or of a defendant's participation in it. But, though Howard was stoutly impeached as to his general reputation, and though proof was made of admissions from which the jury might well have believed that he and not Compton was a prime mover in the crime, still the question whether or not he was an accomplice was one of fact for the jury, and by their verdict it is to be concluded that they held he was not. But, considering his evidence as independent evidence, untainted by participation in the conspiracy, it is at least doubtful if it be adequate and sufficient, standing alone, to show Compton's criminal connection with the forgery, or to show that Compton was a co-conspirator with the others named. One other piece of evidence, however, should be considered in this connection. Exemplars of defendant's handwriting were admitted in evidence and presented to the jury for inspection. They compared this writing with the signature to the forged deed, and a witness testified that Compton had told him of his skill in imitating handwriting. But, while all this evidence is unquestionably slight, considered either as independent evidence in proof of the conspiracy, or as independent evidence tending to connect defendant with the commission of the crime of forgery, we do not deem it necessary to decide whether or not it was legally insufficient, in view of the fact that upon a new trial, which must be ordered, a different state of facts may be presented.

Appellant complains that the testimony of Ware was admitted in advance of proof of the conspiracy, and insists that it was erroneous for the court to receive evidence of the acts and declarations of a conspirator until after the conspiracy and defendant's participation in it had been proved by independent evidence. And upon this proposition he relies upon

the express provision of the Code of Civil Procedure that the acts or declarations of a conspirator against his co-conspirator, relating to the conspiracy, may be received only after proof of the conspiracy. (Code Civ. Proc., sec. 1870, subd. 6.) It has, however, been too often decided that this rule as to the order of the evidence is not mandatory, to warrant a reconsideration of the question; but this much should be said, that since in general the order of proof is entirely within the discretion of the trial judge (Code Civ. Proc., sec. 2042), if the law-makers did not design by this section to limit the exercise of that discretion in this particular, then the section itself is without force. It is the exceptional case which justifies the court in departing from the salutary provision of the code. Considering that the facts expected to be proved by the people are usually, indeed almost invariably, set before the jury in the opening statement of the prosecution, it can seldom happen that the jury will need the evidence of the conspirator in advance of the proof of the conspiracy. The practice has become too common for the trial court in such cases to take the testimony of the conspirator or accomplice before proof of the conspiracy, upon a promise of the prosecution "that they will connect it," or that "it is offered out of order for the better understanding of the jury," or that "it may be stricken out if independent corroborative proof be not subsequently furnished." The regular and ordinary method of procedure, and the one expressly declared by the law, is that the conspiracy should first be established by independent proof to the satisfaction of the court, and only after it has been so established can the court fairly and intelligently rule upon the admissibility of the offered evidence of the co-conspirator. While the course pursued by the court is not one which may be declared error, it is only to be resorted to in extreme cases when the facts from which the conspiracy is to be inferred are so intimately blended with other facts going to constitute the crime that it is difficult to present the evidence in intelligible form without first admitting the testimony of the accomplice. (*People v. Fehrenbach,* 12 Cal. 394.)

However, a new trial must be ordered for several reasons. The court instructed the jury: "That you are not at liberty

to disregard the testimony of a witness where you may believe from the evidence that such witness is corroborated by other competent evidence and the circumstances in proof in the case." If "disregard" is here used as synonymous with "refuse to consider," so that the sense of the instruction is that the jury is not at liberty to refuse to consider the testimony of a witness when corroborated, then the instruction is misleading for the implication which it carries that they are at liberty to refuse to consider such testimony, if not corroborated, for it is the duty of the jury to consider and weigh all of the admitted evidence. whether corroborated or not. But if, as seems probable, "disregard" is used in the sense of "reject," then there is a clear trespass upon the domain of the jury. "The word 'competent,' when relating to a witness, implies a legal capacity to testify, and, when applied to evidence in law, means having the legal capacity or fitness to be heard in court, as distinguished from credibility or sufficiency. . . . . Thus a witness may be competent although unworthy of belief. Evidence may be competent, although not alone sufficient even if believed." (Century Dictionary, "Competent.") Though the jury may believe the witness to be lying, though his story may appear to them incredible, though he may have been successfully impeached, yet by this instruction the court lays down a rule that they may not reject the testimony of such a witness, provided only it be corroborated by other competent evidence. The corroboration may not even be upon material matters. The competent evidence may itself be discredited by the jury. Yet the court attempts to declare to the jury the degree of credibility which they are to accord to such testimony, notwithstanding the fact that under the law and the express provisions of the code (Code Civ. Proc., sec. 1847), they are the sole judges of that credibility, and of the weight to be accorded to a witness' testimony. (*People v. Eckert,* 16 Cal. 111; *People v. Ybarra,* 17 Cal. 166; *People v. Gibson,* 53 Cal. 601; *People v. Messersmith,* 61 Cal. 246; *People v. Gordon,* 88 Cal. 422; *People v. Choynski,* 95 Cal. 640; *People v. Stanton,* 106 Cal. 139.)

Again, the court instructed the jury that they should find the defendant guilty if they believed from the evidence beyond a reasonable doubt that the defendant falsely and feloniously

uttered, published, or passed the instrument described in the information as a true and genuine instrument knowing it to be forged, with intent to cheat and defraud the Columbia Savings Bank, "or delivered said instrument to anyone knowing it to be forged, with intent to have it uttered, published, and passed as a true and genuine instrument, with intent to cheat," et cetera. Section 470 of the Penal Code, under which this information is drawn, makes a forgery of any one or all of three different kinds of act: 1. The crime of forgery is committed if one falsely makes, alters, counterfeits, et cetera, an instrument with intent to defraud another; and 2. The crime is committed by one who utters, publishes, or passes as true and genuine any of the specified forged or counterfeited matters or papers, knowing the same to be false, forged, and counterfeited, with intent to injure another; and 3. The crime is committed if he so attempt to pass such counterfeited matters, et cetera. In criminal law, an attempt to pass a false instrument as genuine is an uttering, even if the attempt fail. But the codifiers for clearness have specifically declared that an attempt to pass shall constitute the crime. The portion of the instruction above quoted is directed to the third class of acts, that is to say, to the attempt to pass. By it the jury was told that if one having a forged instrument in his possession, knowing it to be forged, delivers it to another, with intent to have it uttered, published, and passed as genuine, he is guilty of forgery. But such was not the common law, and such is not the law under our code. In general, before an attempt to commit a crime can be made out, some overt act *toward* its commission, other than a mere act of preparation *for* its commission, must be established. In *People v. Stiles*, 75 Cal. 570, the question of attempt is considered with some fullness, and we need not here pause to elaborate upon it. Now, the essence of the third class of forgeries is the attempt to injure an innocent person by foisting upon him a known false instrument. As is aptly said in *People v. Rathbun*, 21 Wend. 509, where the subject is learnedly and exhaustively considered: "Uttering implies two parties, a party acting and one acted upon. If it be by way of sale, there must be a vendee; if by pledge, there must be a pledgee; if by offer, there must be some one present to

hear the offer. And, if it simply declare its goodness, there must be someone addressed as reader or hearer." Therefore, if one deliver to his agent a false instrument with the design that the agent shall utter or pass it, the crime of uttering or attempting to pass is not complete until after some overt act done by the agent to this end, for, until this shall come to pass, in contemplation of law the paper is still within the control of the principal, and all the steps are but steps of preparation. Equally true is it that if A and B should conspire to commit a crime, and A should deliver a forged instrument to B, by whom it was to be uttered, and B should destroy the paper without attempting to pass it, the crime of uttering or attempting to pass would not have been committed, for there would have been no effort to foist it upon an innocent person, and, as has been said, if the uttering is by offer, the offer must be made to some one. The instruction under consideration announced an opposite rule, and was, therefore, erroneous.

The court instructed the jury "that, while it is true that a conviction cannot be had on the testimony of an accomplice unless he is corroborated by other evidence tending to connect the defendant with the commission of the offense, yet I charge you that such corroborative evidence need not tend to establish the precise facts testified to by the accomplice. It is sufficient if such corroborative evidence tends in any way to connect the defendant with the commission of the crime charged." Elsewhere the court correctly charged the jury upon the law as laid down in section 1111 of the Penal Code. This instruction fails to take account of the essential character necessary to the corroborative evidence, which is that, standing alone, or, as it is phrased in the code, "without the aid of the testimony of the accomplice," it must tend to connect the defendant with the commission of the crime. Here the jury was told that it is sufficient if such corroborative evidence tends *in any way* to connect the defendant with the commission of the crime. Such is not the law. It could tend to connect him with the crime by considering it with the testimony of the accomplice; yet, if it is necessary so to consider, it would not be legally sufficient. It is legally sufficient only if, standing alone, it tends so to connect him. In giving this instruction the court seems to have

had in mind the case of *People v. Cloman*, 50 Cal. 449, but there the opinion merely lays down the indisputable rule that the evidence which, standing alone, is sufficient as tending to connect the defendant with the crime, need not be corroborative of the precise acts and facts related by the accomplice. But there is nothing in this case, nor in any other, which justifies the elimination from the instruction of the vital circumstance that the evidence independently considered must be sufficient for the purpose.

The court further instructed the jury: "That the distinction between an accessary before the fact and the principle in case of a felony is abrogated, and all persons concerned in the commission of a felony, whether they directly committed the act constituting the offense, or aided or abetted in its commission, though not present, shall be prosecuted, tried and punished as principals." As to this instruction, it is sufficient to say that it charges in the disjunctive that one who either aids *or* abets is guilty, when the language of the Penal Code, section 971, in consonance with justice requires that one shall both aid *and* abet. This precise error has been recently considered in the case of *People v. Dole*, 122 Cal. 486.

The defendant presented to the court his motion that the judge of the department before which he was tried should transfer his cause to another department and to another judge, or should call in some other judge to sit in his place. The ground of the motion was the alleged bias and prejudice of the judge. The defendant supported his motion by his affidavit stating that he could not have a fair and impartial trial before the judge by reason of his prejudice and bias, and upon information and belief alleged facts tending to show that the judge had formed and expressed an opinion of the guilt of the defendant. No counter-affidavits were filed, but the motion was denied. While at civil law the bias or prejudice of a judge against a litigant was a valid ground of recusation, as it was valid ground of challenge against a juror, it was not so at common law, nor has it been so in this state until the change effected by a recent amendment to the code. (*People v. Williams*, 24 Cal. 31.) Section 170 of the Code of Civil Procedure, as amended in 1897, provides that no justice, judge, or justice of the peace shall sit

or act as such in any action or proceeding: "4. When it appears from the affidavit or affidavits on file that either party cannot have a fair and impartial trial before any judge of a court of record about to try the case, by reason of the prejudice or bias of such judge, said judge shall forthwith secure the services of some other judge of the same or another county to preside at the trial of said action or proceeding." The section provides for the filing of counter-affidavits, and that a party may have but one such change of judges. But, while this modification of the common-law rule is thus new to our state, we are not without like statutes from other states. Indeed, as to justices of the peace a somewhat similar provision has long been upon our books. It was found in section 582 of the practice act, and has been re-enacted in subdivision 2 of section 833 of the Code of Civil Procedure. The place of trial, where the action is commenced in a justice's court, must be changed when either party makes and files an affidavit that he believes that he cannot have a fair and impartial trial before such justice, by reason of the interest, prejudice, or bias of the justice. Under this law it has always been held that the filing of an affidavit in conformity with its provisions makes it the duty of the judge to transfer the cause. (*People ex rel. Flagley v. Hubbard*, 22 Cal. 34.) It seems to have been contemplated by the legislature in framing the statute applicable to the justice's court that the justice shall be relieved from the very delicate and trying duty of deciding upon the question of his own disqualification, and that the mere fact that a suitor in his court makes affidavit of his belief that the justice is biased against him renders it imperative upon the justice to transfer the cause to some other disinterested officer. We should unhesitatingly say that this same salutary rule was in the mind of the legislature when it amended section 170 of the Code of Civil Procedure by providing that the litigant shall have a new judge or a transfer of his cause "when it appears from the affidavit or affidavits on file that either party cannot have a fair and impartial trial, by reason of the bias or prejudice of the judge." But the succeeding portion of the amendment seems to militate against this view, for it is therein provided that counter-affidavits may be filed. It would be useless to permit the fil-

ing of counter-affidavits unless they could be considered and weighed in determining the controverted fact of the judge's bias. But one thing at least is certainly clear, that the provision contemplates that the question shall be determined upon affidavits, and that the facts found are to be found from the affidavits, and that the judge is neither to be called upon nor to be permitted to use his own knowledge of the matter. If in fact he knows himself not to be disqualified, it is not for him to deny the motion if the contrary "appears from the affidavit or affidavits on file." In this case the defendant brought himself within the letter and the meaning of the provision. He made it appear by the facts set up in his affidavit (however ill-founded the affidavit may have been in truth) that the judge was biased and prejudiced against him. No counter-affidavits were filed. There was, then, not even a conflict upon the facts. The duty of the trial judge was plain. The defendant having made it appear by affidavit in conformity with the requirements of the statute that the judge was biased or prejudiced against him, his motion should have been granted. (*McGoon v. Little*, 7 Ill. 42; *Witter v Taylor*, 7 Ind. 110; *Rines v. Boyd*, 7 Wis. 155; *Walsh v. Ray*, 38 Ill. 30; *Cass v. State*, 2 Greene, 353; *Griffin v. Leslie*, 20 Md. 15; *Mix v. Kepner*, 81 Mo. 93.)

The judgment and order are reversed and the cause remanded.

Temple, J., and McFarland, J., concurred.