[Crim. No. 331.    Third Appellate District.—March 11, 1916.]

THE PEOPLE, Respondent, v. ALBERT E. FISHER, Appellant.

CRIMINAL LAW—KIDNAPING FOR PURPOSES OF EXTORTION OR ROBBERY—INTENT—EVIDENCE.—In a prosecution under section 209 of the Penal Code for maliciously, forcibly, or fraudulently taking or enticing away any person with intent to restrain such person and thereby to commit extortion or robbery, or exact from the relatives or friends of such person any money or valuable thing, the intent with which such an unlawful act is performed, or the ultimate object which the actor has in view, may be shown by circumstances.

ID.—CONSUMMATION OF PURPOSE UNNECESSARY.—In the commission of such a crime it is not necessary for the purpose charged in the information to be accomplished in order to make it effectual as an element of the crime; all that is required is that some overt act be done toward the execution of the purpose and the fulfillment of the intent.

ID.—INSTRUCTION—AIDING OR ABETTING OF CRIME.—An instruction in a prosecution for such a crime, that all persons concerned in the commission of the crime, whether they directly commit the act constituting the offense or aid *or* abet in its commission, or, not being

present, have advised and encouraged its commission, are principals in any crime so committed, is not prejudicially erroneous, where the jury is also instructed that they must acquit the defendant unless they believe beyond a reasonable doubt and to a moral certainty that he had the intent and purpose to extort from, or rob, the complaining witness, or to exact money or lands from his relatives or friends.

APPEAL from a judgment of the Superior Court of Merced County, and from an order denying a new trial. J. J. Trabucco, Judge presiding.

The facts are stated in the opinion of the court.

Ben Berry, and L. J. Schino, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—This case, as set forth in the transcript, reveals a strange story. It reads as though it were a tale of medieval brigandage. Defendant and one F. W. Kirkman, riding in an automobile on the morning of May 26, 1915, near the city of Merced, saw approaching in a buggy F. W. Henderson, a prominent attorney of said city, who was on his way from his home in the country to his office in Merced. Appellant and Kirkman, alighting from the machine, approached the head of the horse that he was driving and, both pointing pistols at Henderson's head, demanded that he get out or they would kill him. He was then compelled to get into the automobile which contained two seats and had side curtains. He was then required to write a note to his stenographer giving an account of his absence. Kirkman and Fisher then handcuffed him to an iron rail attached to the seat of the automobile. Fisher then drove Henderson's horse and buggy into Merced and delivered said note to the stenographer and, thereafter, he walked to the outskirts of the city and rejoined the occupants of the automobile. From this point the machine was driven along the public highway until the city of Stockton was reached and, while making a turn from one street to another, Henderson managed to get the door open and he jumped headlong out, Fisher ineffectually attempting to grab him. Kirkman was driving and temporarily lost control of the car, with the result

that it collided with an iron lighting post and was brought to a standstill.   Kirkman and Fisher took flight and the former has not been apprehended.   Fisher was arrested in Los Angeles and convicted in the superior court of Merced County upon an information charging that he "did willfully, unlawfully, feloniously, maliciously, forcibly and fraudulently take, entice and carry away one F. W. Henderson, with the intent then and there to restrain said F. W. Henderson, and thereby to commit extortion and robbery from said F. W. Henderson, and to exact from the relatives of said F. W. Henderson, money, lands, promissory notes, deeds, real property, personal property, and other valuable things."

It is not disputed that therein is properly set forth the offense contemplated by section 209 of the Penal Code, nor is it claimed that the evidence is insufficient to support the offense of kidnaping, but the main contention of appellant is that there is a failure of proof as to the intent charged in said information.   With this contention we do not agree.   Manifestly, the intent with which such an unlawful act is performed, or the ultimate object which the actor has in view, must ordinarily be shown by circumstances.   It is not to be supposed that the perpetrators would openly declare the full purport of their nefarious design, although it does appear that they threatened to kill Mr. Henderson if he made an outcry or attempted to escape.

Mr. Henderson does not say that the conspirators or either of them declared an intention to resort to extortion or robbery, but certain facts related by him and by other witnesses furnish mute but persuasive testimony that such was the intention. At least, from the many circumstances appearing in the record, it cannot be said that the inference drawn by the jury was or is unreasonable.   As a striking example of these significant circumstances we may refer to some of the articles that were found in said automobile.   There was a telephone apparatus by which telephone connection could be had through the wire running at the side of many of the public roads, also a complete telephone directory of the city of Merced.   There were also many promissory notes in favor of Kirkman for large sums of money, needing only the signature of some promisor to make them complete.   There was also a complete map of the land owned by Henderson, and a deed containing an exact description of land owned by the mother-

in-law of Henderson, without any signature thereto. To the foregoing we may add the fact that, while Henderson was being taken along the highway as before described, defendant Fisher attempted to induce him to drink some wine which was afterward found to contain chloral, a drug producing sleep. When they passed other machines Henderson was also compelled to hide his handcuffs and himself as much as possible. Considering these things in connection with the forcible abduction of the prosecuting witness, it is not strange that the jury found a verdict of guilty as charged. Indeed, any other verdict would have been surprising.

It is true that while being spirited away Henderson was told that he was being taken to some indefinite place in order that his affidavit to certain facts might be obtained. We need not go into the details of that, however, as it has never yet been held that the jury is bound to accept at its face value such self-serving declarations of one charged with a crime. Besides, it may be added, the story was so whimsical and improbable that it could justly be disregarded and repudiated.

Of course, it is not necessary for the purpose charged in the information to be accomplished in order to make it effectual as an element of the crime. All that is required is that some overt act be done toward the execution of the purpose and the fulfillment of the intent. The forcible removal of Mr. Henderson, and the other preparations indicated by what was found in the automobile, satisfy the requirement of the law in that respect. It may be illustrated by the proof of intent in burglary. Therein if the defendant is charged with the entry of a building with intent to commit larceny there must be the overt act of entering the building before a conviction can be had, but from this entry under suspicious circumstances the jury may infer the intent to commit larceny although no larceny was actually accomplished.

There is no more merit in the other contention as to a declared instruction of the court. It seems that the instructions of the court by stipulation were taken down in shorthand and afterward transcribed by the official reporter and filed with the clerk. Among these appears the following: "I charge you, gentlemen, that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid *or* abet in its commission, or, not being pres-

ent, have advised and encouraged its commission, are principals in any crime so committed.''

This is the contention of appellant: "In this instruction, the jurors were told that an accessory was one who aided *or* abetted in the commission of a crime, and we submit that the learned judge thereby transgressed the plain letter of the statute. He read to the jury section 31 of the Penal Code, and in doing so changed its language and perverted its meaning. We will admit for the sake of argument that the defendant did *aid* in the commission of a crime. He aided and assisted Kirkman, no doubt, in enticing or carrying away Henderson. If while this carrying away was being accomplished, he knew of the existence on the part of Kirkman of the specific intent to extort money or property from Henderson or his relatives, as charged in the information, he not only aided, but also abetted, in the commission of the crime for which he was convicted. But from this instruction the jury were led to believe that by the mere aiding in carrying away of Henderson, without abetting the crime which Kirkman intended to commit, to wit: the crime of extortion, the defendant could be found guilty, as charged in the information.'' It is further urged that there is no evidence that Fisher had knowledge of any such intention of Kirkman, and that said instruction was not rendered harmless by other instructions.

The rule is stated in *People* v. *Dole,* 122 Cal. 486, [68 Am. St. Rep. 50, 55 Pac. 581], that such instruction "is erroneous, as implying that a person who did not commit the offense may be found guilty for mere aiding of the offense without guilty knowledge and without 'aiding and abetting' the offense, but such error is cured by an instruction from which the jury could not fail to understand that aiding or assisting in the crime without guilty knowledge is not criminal.'' The qualification therein stated is strikingly applicable here, for the court clearly and forcibly instructed the jury that they must acquit the defendant unless they believed beyond a reasonable doubt, and to a moral certainty, that he had the intent and purpose "to extort from, or rob, the said F. W. Henderson, or to exact from the relatives of the said F. W. Henderson money or lands,'' etc. In fact, in several instructions he was treated as a principal, and the jury was admonished, over and over again, that they must believe every element of the crime charged had been proven against the defendant to a moral certainty and beyond

a reasonable doubt or else he must be acquitted.   It is not possible that appellant was prejudiced by said instruction, if it was given.   The doubt manifested in the last clause is expressed for the reason that through the proceeding known as "diminution of the record" a copy of said instruction as filed in the lower court has been presented here, duly certified by the clerk of said court, and this copy corresponds exactly with the language of said section 31 of the Penal Code, containing the words "aid and abet" instead of "aid or abet."   However, this is probably not conclusive, as the trial judge did not certify that he *read* the instruction as it was *written*, whereas he certified to the transcript as containing a correct *record*. But the matter is of no importance as no prejudicial error was committed.

Appellant was justly convicted of a villainous and dastardly crime, and it requires no small degree of patience and forbearance to treat with serious consideration the technical reasons urged for a new trial.   The judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 4, 1916.