[Crim. No. 3198. In Bank.—August 30, 1929.]

THE PEOPLE, Respondent, v. ANTONE NEGRA, Appellant.

Andrew R. Schottky, Edward Bickmore and H. A. Gabriel for Appellant.

U. S. Webb, Attorney-General, J. Charles Jones, Deputy Attorney-General, and F. M. Ostrander, District Attorney, for Respondent.

WASTE, C. J.—Antone Negra and Robert, known as "Buck," Deluchi were indicted jointly by the grand jury of the county of Merced for the crime of murder. They were tried separately. Negra was found guilty of murder in the first degree. The jury failed to fix the punishment and Negra was sentenced to pay the extreme penalty. The conviction rested mainly on the testimony given by Deluchi, and Negra has appealed, urging the insufficient corroboration of an accomplice to sustain the judgment, and alleged errors of the lower court occurring during the trial.

Deluchi was present at the killing of the decedent and testified in detail as to the manner in which the deceased was lured to a lonely ranch, some distance from Los Banos, and there shot by Negra. Therefore, our consideration of the evidence is to be directed to determining whether or not Deluchi's testimony, that of an accomplice, is corroborated by such other evidence as tends to connect the appellant Negra with the commission of the offense. (Pen. Code, sec. 1111.)

The evidence discloses that Negra and Ralph Amabile, the deceased, were copartners in the sheep business. They were first cousins and brothers-in-law. The partnership was indebted to a bank at Los Banos in the sum of approximately $46,800, partly secured by a mortgage upon sheep, cattle and other personal property. As further security for the indebtedness, an insurance policy on the life of Amabile had been obtained in the sum of $10,000, with a double indemnity clause ($20,000) for accidental or violent death. The appellant Negra was shown to be a very intimate friend of the wife of the deceased. Their relations were objectionable to Amabile and were such as to "cause talk" in the community.

Amabile left his home on the evening of July 24, 1928, at about half-past 7 o'clock, saying he was going to a distant ranch to meet a man on business. Three days later his dead body was found. He had been shot, the bullet entering his back and piercing his heart. The truck, in which he left his home on July 24th, was found several days after the murder, abandoned on a street in Tracy. It is the theory of the prosecution that in killing Amabile the appellant was actuated by two motives: First, to secure money to place the business in a better financial condition through collecting the insurance on the life of his partner; and second, to remove the obstacle of Amabile's objections to appellant's intimacy with Amabile's wife. Ten thousand dollars of the insurance was collected and paid to the bank immediately after Amabile was killed.

The witness Deluchi testified that for several weeks prior to the actual killing the appellant had endeavored to get him, Deluchi, to "pull a job" for him for which he would give Deluchi $500. Appellant said to Deluchi: "This Ralph Amabile, he is going or me. We have been fighting all the time." Appellant gave Deluchi money on several occasions, once for the purpose of buying a gun. Through Deluchi, the appellant endeavored to get two other men, living in Stockton, to do the "job," which he told each was to kill Amabile. Neither of the men approached consenting to kill Amabile, according to Deluchi's testimony, Negra said he would "get him" and that he "had an alibi all fixed." Amabile was then induced by Negra and Deluchi to go to the deserted Santa Nella ranch. There is some evidence from which it may be inferred that he was requested by them to go there for the purpose of getting some stolen calves. Negra and Deluchi reached the ranch before Amabile. Negra went into the barn. Amabile soon arrived, backed his truck up to the barn and got out. There was a shot, Amabile fell, and when Deluchi came up Negra said to him, "I guess the son-of-a-bitch won't bother me now." He told Deluchi to take Amabile's truck out to the highway. Later in the evening appellant and his wife went to a moving picture show in Los Banos, and Negra apparently made an effort to be seen there and that his automobile should be seen near the theater. The prose-

cution's theory is that appellant was thereby laying the basis for an attempt to establish an alibi. Deluchi drove the truck to Stockton and then to Tracy, where he abandoned it.

Immediately after the discovery of the body the appellant was interviewed by deputy sheriffs concerning the death of Amabile, and the movements and whereabouts of himself and Deluchi prior to and on the 24th of July. He made many statements which were subsequently shown to be untrue, and later, when confronted with the falsity of his statements, he made further denials, and became angry. After three or four days, however, he went to the office of the sheriff and was taken to the office of the district attorney, where he admitted, as subsequently proved by several witnesses, that on July 24th he had been with Deluchi near the place where the crime was committed, and about the time of the killing of Amabile, as described by Deluchi. While the search for Amabile's body was being conducted, and during the time the authorities were seeking to reconstruct the incidents leading to and surrounding the murder, appellant was, according to the testimony of several witnesses, nervous, and expressed himself as fearing trouble if the body should be found. In the presence of a number of persons who testified in the case he stated that Morse, a deputy sheriff investigating the killing, was trying to connect him with the crime, and if "he did not look out [he] would blow his head off too." He uttered the same threat, in substance, against persons who told the officers they saw Deluchi and him near the scene of the crime. Appellant's reasons, given when on the stand, for not admitting that he was with Deluchi on the day of Amabile's death, and his explanation and his counsel's theory as to why he did not tell the authorities that he was with Deluchi near the scene of the murder at about the time it was committed, failed to impress the jury. It was plausible, but did not satisfy. According to his testimony, Amabile was engaged in stealing cattle, against his, appellant's, remonstrance, and Deluchi was apparently in on the deal; he had, at Amabile's request, taken Deluchi to meet Amabile; and he was "scared they would run [him] into this thing." The fact that appellant and Deluchi were much together and had frequent tele-

phone conversations during the weeks preceding Amabile's death, as testified to by Deluchi, appears to be abundantly established by the testimony of a number of witnesses.

The witness Eddie Smith corroborated the testimony of Deluchi that appellant bought a gun in Stockton and endeavored to induce Smith and another man, "Shillalah Buck," to "do the job," as "Buck Deluchi ran out on him." It is argued that Smith was also an accomplice. Whether he was or not was a fact to be determined by the jury under the instructions of the court (*People* v. *Compton,* 123 Cal. 403, 407 [56 Pac. 44]) ; but, without Smith's testimony, there is sufficient evidence in the record, independent of that of Deluchi, tending to connect the appellant with the commission of the offense to comply with the provisions of section 1111 of the Penal Code.

While the jury may consider the circumstance that a witness is an accomplice, in passing upon his credibility as a witness (*People* v. *Clough,* 73 Cal. 348, 354 [15 Pac. 5]), his testimony is not to be rejected merely because he is an accomplice, and if there is other evidence which measures up to the requirement of the code (*supra*), tending to connect the defendant with the commission of the crime charged, then such testimony of the accomplice is to be considered by the jury, as is any other testimony, and must be given the weight to which the jurors may conclude that it is entitled. (*People* v. *Hoosier,* 24 Cal. App. 746 [142 Pac. 514].) The evidence tending to connect a defendant with the commission of the crime may be slight and, when standing by itself, entitled to but little consideration. (*People* v. *McLean,* 84 Cal. 480 [24 Pac. 32].) The law does not require that the evidence necessary to corroborate the testimony of an accomplice shall tend to establish the precise facts testified to by the accomplice; and strong corroborative testimony is not necessary to support a judgment of conviction founded on the testimony of an accomplice. Even though circumstantial and slight, the evidence is, nevertheless, sufficient if it tends to connect the accused with the commission of the offense. (*People* v. *Martin,* 19 Cal. App. 295 [125 Pac. 919].) The defendant's own statements and admissions, made in connection with other testimony, may afford corroboratory proof sufficient to sustain a verdict. (*Peo-*

*ple* v. *Armstrong,* 114 Cal. 570 [46 Pac. 611]; *People* v. *Sullivan,* 144 Cal. 471, 473 [77 Pac. 1000].) It is not necessary that the corroborating evidence should go so far as to establish by itself, and without the aid of the testimony of an accomplice, that the defendant committed the offense charged. (*People* v. *Solomon,* 6 Cal. Unrep. 305 [58 Pac. 55].) It is not necessary to cite the great number of authorities which sustain these fundamental principles of law relating to the testimony of an accomplice. An examination of the decisions will show that the evidence in each case must be considered in the light of these rules, applied to its particular facts, and a determination reached accordingly.

 We are of the view that there is evidence in this case, other than the testimony of Deluchi, which, when considered as a whole, tends, quite convincingly, to connect the defendant with the commission of the offense for which he was indicted. The jurors accepted it and, under correct instructions passed upon its weight and the credibility of the witnesses who gave it. Its weight and the credibility of the witnesses were again passed upon by the trial court on a motion for a new trial, which was denied. We find no legal ground for disagreeing with the conclusion of the court and jury.

 Because of the importance the jury must have attached to the testimony of Deluchi, appellant complains that the trial court unduly limited the cross-examination of that witness, and prevented appellant from following an inquiry vital to his case. The record does not bear out the contention. After the homicide, Deluchi went first to Stockton, where, he testified, appellant met him and gave him $50. He then fled to Mexico, where he was apprehended and returned to Los Angeles. He refused to discuss the killing of Amabile with the arresting officers, but talked freely with Mr. Ostrander, the district attorney of Merced, who interviewed him in the office of the district attorney of Los Angeles County. The details of that conversation and what was there said were not offered in this case, for Deluchi was not on trial, and his extrajudicial statements to Mr. Ostrander in Los Angeles were no part of the case against appellant. Near the close of appellant's cross-examination of Deluchi the witness was asked

who was the first person to whom he told the story of the killing of Amabile after his arrest. He replied that it was Mr. Ostrander. The record continues as follows: "Q. Who spoke to you first? A. Mr. Ostrander. Q. What did he say to you? A. He said, 'how do you do,' or 'hello,' or 'how are you.' Q. And then what? A. He asked me then, he started to ask me in regard to this case. Q. And did you immediately tell him all about it, or did you deny it first. Mr. Ostrander: If the Court please, we object as incompetent, irrelevant and immaterial, and not proper cross-examination. The Court: The objection is sustained. If you want to make him your own witness, you may do so at the proper time. Mr. Gabriel: Q. Was there any promises made to you? A. Nothing whatever. Q. Has there been any since then, any promises made to you in reference to this case? A. Nothing, no promises whatever, only my attorney had wrote me a letter while I was in Madera, to come and make a clean breast of everything and to tell the truth, and also my relatives in San Francisco." A number of questions about the letter followed, and the witness was questioned as to his attitude toward appellant and if he was not trying to convict appellant. He answered that he was not. The cross-examination of Deluchi was long and searching before and after the incident noted. In view of the serious nature of the charge against appellant and the alleged association of Deluchi in the commission of the crime, the ruling complained of might well have been otherwise; but, when we review the record of the entire cross-examination, we find no justification for the plea that appellant was unduly limited. He cites no other ruling in support of his contention. The court and prosecution accorded appellant a very wide latitude in the cross-examination, which went into the minutest details of Deluchi's testimony.

■ Complaint is made of certain of the trial court's instructions. In one part of the charge to the jury it told the jurors that if they "believed from the evidence beyond all reasonable doubt that defendant, Antone Negra, instituted the homicide, *and aided or abetted its commission*," even though not present at the actual killing, the jury should return a verdict of guilty. Complaint is made of the use of the disjunctive word "or" in the italicized por-

tion of the instruction, instead of the conjunctive word "and," as used in the definition of an accomplice found in section 31 of the Penal Code. Support for the contention that the instruction is erroneous is found in two old decisions of this court, in which the instructons then under consideration were held to be improper. (*People* v. *Dole,* 122 Cal. 486 [68 Am. St. Rep. 50, 55 Pac. 581]; *People* v. *Compton,* 123 Cal. 403 [56 Pac. 44].) We are not now so impressed with the soundness of those decisions on the point now made as to accept their application unless that be found absolutely necessary. In fact, in the Dole case the court held that a correct specific instruction on the precise point affected by the improper use of the word "or" in the erroneous instruction cured the error, and that has ever since been the rule. (*People* v. *Arnold,* 199 Cal. 471, 499 [250 Pac. 168]; *People* v. *Morine,* 138 Cal. 626, 629 [72 Pac. 166]; *People* v. *Anderson,* 59 Cal. App. 408, 431 [211 Pac. 254]; *People* v. *Fisher,* 30 Cal. App. 135, 138 [157 Pac. 7]; *People* v. *Fredoni,* 12 Cal. App. 685 [108 Pac. 663].) While in this case the instruction complained of is the one specifically referring to the defendant Negra, the trial court not only correctly read the part of section 31 of the Penal Code defining who are principals, but immediately followed the criticised instruction with two others, in one of which it told the jury that a principal must aid *and* abet in the commission of the crime, and in the other extended the definition of an accomplice to be one who "with criminal intent aids, abets and assists another in the commission of such crime." We are, therefore, satisfied in this case, as we were in *People* v. *Arnold, supra,* that, in view of all the instructions given on the subject of who are principals in the commission of criminal offenses, and the general circumstances of the case, the jury could not have taken the charge as to "aiding and abetting" in the narrow and literal sense which might attach if the objectionable instruction was the only one on the subject.

Complaint is also made that the lower court erroneously instructed the jury on the doctrine of the defense of alibi, but fails to point out wherein the alleged error lies. As we read it, the instruction, in substance, correctly states the law (*People* v. *Winters,* 125 Cal. 325, 327 [57 Pac. 1067]), and was favorable to the defendant.

In support of his motion for a new trial, appellant presented the affidavits of a number of persons. These were met by counter-affidavits offered by the prosecution, and the motion was denied. On reading these affidavits we are convinced that the trial court did not abuse the wise discretion vested in it in ruling on the motion. What has been before said by this court on that subject covers the case so exactly that we refer to the decision in *People* v. *Weber,* 149 Cal. 325 [86 Pac. 671], and especially to the language of the court and the decisions cited on page 350 of the Report.

The evidence in this case fairly supports the verdict of the jury. The rulings and instructions of the court complained of did not constitute error.

The judgment of conviction and the order denying the motion for a new trial are, and each is, affirmed.

Curtis, J., Richards, J., Seawell, J., Shenk, J., and Preston, J., concurred.

LANGDON, J., Dissenting.—I dissent. The chief witness for the prosecution was an admitted accomplice, Buck Deluchi. I think the court erred in curtailing the cross-examination of the accomplice, Deluchi, without whose testimony no conviction could be had in this case. It is evident that the testimony of Deluchi is full of contradictions and his reputation for truth, honesty and integrity was shown by the testimony of a number of reputable witnesses to be bad. It is evident, also, that he was testifying to save his own life and, therefore, the widest latitude should have been extended on the cross-examination of this witness.

I am satisfied, also, that the corroboration of the accomplice falls far short of the standard required as set forth in *People* v. *Kempley,* 205 Cal. 441 [271 Pac. 478].

Rehearing denied.

Langdon, J., dissented.