[Crim. No. 1381.   Fourth Dist.   Oct. 30, 1958.]

THE PEOPLE, Respondent, v. WILLIAM OTIS CONKLIN, Appellant.

*Assigned by Chairman of Judicial Council.

T. T. Crittenden for Appellant.

Edmund G. Brown, Attorney General, and Carl Boronkay, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—Appellant William Otis Conklin was charged in count one of an amended information and was convicted by a jury of aiding and abetting one Womack and one Shields in the commission of a robbery (first degree) on November 24, 1957; in count two of robbery (second degree) on November 22; in count three with burglary (second degree) on November 23rd; in count four, of conspiracy to commit robbery, on November 24th; in count five, of conspiracy to commit robbery on November 22nd; and in count six, of conspiracy to commit burglary on November 23rd. Several separate and distinct overt acts are alleged under the conspiracy counts. Appellant was sentenced to state's prison, sentences to run consecutively on counts one and two, and the remaining counts to run concurrently with counts one and two.

Counsel for appellant sets forth in his brief an elongated and all-inclusive statement of the many reasons why he claims the judgment should be reversed. As we construe it, he claims that appellants codefendants, Shields and Womack, pleaded guilty to the robberies under some alleged "deal" with the district attorney; that in truth and in fact these codefendants "used" appellant to assist them in the robberies and burglaries alleged; that there was no evidence showing appellant received any of the loot or benefit from the robberies; that one of the codefendants and principal witness at the trial had "vengeance against him" and "framed" this appellant by implicating him in these alleged offenses; that appellant's acts in connection with these crimes were only incidental to and were innocent acts; that there was no sufficient corroboration of the testimony of the two named conspirators; that these alleged conspirators had been on a "robbery spree" for over six weeks and appellant was but a tool in their hands; that although he furnished transportation to them it was the same as any public utility, and that the evidence was not sufficient to support the verdicts on any of the counts alleged. No authorities are cited and no reference to the record is made supporting these claims. We have read the entire transcript. The testimony of the two co-conspirators, if believed by the jury, fully supports the charges

made. The only possible point indicating any merit would involve the question of corroboration of their testimony.

Generally speaking, it was on November 22nd that appellant Conklin, Womack and Shields were together at Imperial Beach and had a conversation relating to robbery. They discussed robbing a cab driver in San Ysidro. Shields and Womack were to enter a cab and appellant was to follow it in his car. They planned that Shields would hit the cab driver and Womack would take his money; that the loot would be divided three ways; that Shields and Womack entered the cab of one Kilcrease, and directed him to drive to a certain location. Appellant was parked in his automobile at the San Ysidro Hotel awaiting a prearranged signal to follow as the cab went by. One of the cab passengers acted as if he were sick and drunk, so the driver stopped and opened the door. Womack then grabbed the driver and after a scuffle the driver slumped down on the seat. His money and his watch were taken. The appellant did not appear but met Shields and Womack the following day. They told appellant they had gotten some money but they were not going to share it with him because he did not fulfill his part of the plan. However, on the night of November 23rd the appellant Conklin, Shields and Womack were riding together in the Logan Heights area in appellant's car. They had a conversation about burglarizing a TV store. Appellant took them to the store and gave them a key to it. Shields and Womack were to burglarize it while the appellant waited for them. They entered the store and took some "Hi-Fi" equipment. As they came out they saw the spotlight of a patrol car, dropped the articles taken, and ran down an alley. Appellant did not appear immediately, but in a little while he drove through the same alley. Shields and Womack got in appellant's car and he told them there were patrolmen all around the place.

On November 24th Shields, Womack and the appellant again met at a drive-in in the Pacific Beach area and discussed robbing a cab driver. They predetermined an address where Shields and Womack were to be driven by the cab driver. They agreed that appellant would then call a cab and follow it in Shields' car, after Shields and Womack entered the cab, in order to pick them up after they robbed the driver; and that if connections were not made they were to meet at a certain bar not far from the address agreed upon. Shields picked out an address and the three went there to view the

area. They proceeded to the Aztec Bar and appellant called a cab from a near-by public booth. A cab arrived and Shields and Womack entered it, giving the driver the address agreed upon. When they arrived there they struck the driver, Van Stelle, with a flashlight and took his billfold, money, wrist watch and gloves. The appellant did not appear at the scene of the robbery at this time, so Shields and Womack proceeded to the bar where they had agreed to meet following the commission of the crime. A short time later the appellant arrived there. When Shields and Womack left the cab the driver called the cab company from a radio in the vehicle. In about a minute a police car arrived at the scene as well as a 1954 Chevrolet automobile driven by the appellant. The police officers brought the appellant from his car to the cab driver who failed to identify him as one of the assailants and he was released.

An officer who answered the robbery call was at the scene of the crime when appellant was observed backing west on Thomas Street in the 1954 Chevrolet. He talked to him and then appellant left. The officer remained there and was talking to the victim when again he noticed appellant driving up in a 1957 Chevrolet. Later appellant arrived at the bar where he and his companions had arranged to meet, driving his own automobile, a 1957 Chevrolet, and told Shields and Womack they had better leave because there were police in the area. They drove toward La Jolla and appellant, upon seeing a patrol car, told Shields and Womack to say they were on Mount Soledad transmitting on a ham radio set. Officers then stopped appellant's car.

At about midnight on November 24th, 1957, an officer stopped a 1957 Chevrolet on La Jolla Boulevard. Appellant got out of the car and spoke to the officer and said he was going to Ocean Beach and had been on Mount Soledad with his "ham" radio. Shields and Womack were seated in appellant's automobile. On his way to the station the officer observed that the 1957 Chevrolet in which he had seen the appellant earlier that evening, had been stopped by another police officer, and he recognized the driver as the appellant. He observed that two other men, Shields and Womack, were also in the car. Another officer was also present when appellant was stopped and out of the presence of Shields and Womack appellant told him that there were some things he could tell him. Appellant then stated, in the presence of another officer, that Womack and Shields had committed the

robbery in Pacific Beach; that they were at the Aztec Bar and they, Womack and Shields, had planned the robbery, planned to call the cab, had a prearranged place, and they agreed to rob the cab driver at that place. He stated that he had been in the area of Thomas Street looking for Womack and Shields. He then asked if the officer had heard of the cab driver who was robbed in San Ysidro and then related that Womack and Shields had committed that robbery and told him about it the following day. At the police station appellant related the details of the robbery of Van Stelle at Pacific Beach. When asked about the things taken in the robbery he stated that the gloves were left on a barrel near a service station or used-car lot near the bar where he had picked up Womack and Shields. An officer recovered the wrist watch of Van Stelle from a grey jacket lying on the rear seat of appellant's automobile.

About December 4th the officer had a conversation with appellant as he was brought to court for arraignment on the charge of burglary. Appellant stated to him that he had been employed by Dependable TV and Appliance Company; that at one time he was sent to have a duplicate key made, and he had two duplicate keys made and kept one for himself; that on the night of the burglary he, Shields and Womack were driving by this store and he mentioned that he had a key to it and Shields and Womack then stated they would like to burglarize it; that he gave them the key, dropped them off, and later on he picked them up.

Appellant, in defense, testified generally that on November 22nd he went to the Drive-In at Imperial Beach with Shields and Womack and there met their friends; that they later went to a party, and then drove away; that they stopped at San Ysidro for a short time and then drove on to the border; that he remained in his automobile while Shields and Womack left the car and said they would come back in 10 or 15 minutes; that he waited that time but his companions failed to return and he went home; that on November 23rd he, Shields and Womack were together at the Drive-In until late in the evening; that they drove through Logan Heights, passing the Dependable TV store; that he mentioned he used to work there and remembered he still had a key to the place; that when he mentioned it his companions said they wanted to enter the store; that he said "If you're stupid enough to go in you are on your own"; that he gave them the key, let them out of the car, and drove around the corner; that he

waited there quite a while and then drove through an alley observing a police car there, and proceeded downtown; that he returned to the alley in 10 or 15 minutes, heard his companions calling to him, and picked them up. He then testified that on November 24th he again went to the Drive-In and met Shields and Womack, and he and Womack planned to meet Shields later in Pacific Beach; that he and Womack drove to Mount Soledad and did some "hamming" there and then went to the Drive-In where they again met Shields; that they entered Shields' car and drove to the Aztec Bar; that Shields and Womack went into the bar and appellant drove around in Shields' car; and that he started toward a girl-friend's house when he had trouble with the car and had to back around the corner; that there he saw a police car and a cab; that he was then taken to the cab driver and was permitted to leave; and that he drove away thinking of why he was stopped.

It appears that on testing the radio in the car it was tuned in for the police calls. A mere recitation of the testimony produced sufficiently establishes the commission of the crime, and there is sufficient corroborating evidence to satisfy the requirements of section 1111 of the Penal Code. (*People* v. *Henderson*, 34 Cal.2d 340, 343 [209 P.2d 785]; *People* v. *Trujillo*, 32 Cal.2d 105, 110 [194 P.2d 681]; *People* v. *McLean*, 84 Cal. 480, 481 [24 P. 32]; *People* v. *Negra*, 208 Cal. 64, 69 [280 P. 354].)

An examination of the record on appeal illustrates that the appellant received a fair trial; that there is sufficient evidence to support the judgment of conviction; and there is additional evidence, independent of the claimed coconspirators, enabling the jury to accept as true the accomplices' testimony.

Judgment affirmed.

Mussell, J., and Coughlin, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.